**NATIONAL LABOR RELATIONS BOARD, Plaintiff-Appellee,**

v.

**STATE OF ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, Defendant-Appellant.**

No. 91-3717.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1992.

Decided March 15, 1993.

Nancy E. Kessler–Platt, N.L.R.B., Contempt Litigation Branch, Washington, DC (argued), Harvey A. Roth, N.L.R.B., Chicago, IL, Margery E. Lieber, N.L.R.B., Special Litigation, Corinna L. Metcalf, N.L.R.B., Injunction Litigation Branch, Washington, DC, for N.L.R.B.

Jennifer A. Keller, Asst. Atty. Gen. (argued), Civil Appeals Div., Richard S. Grenvich, Michael Prousis, Chicago, IL, for State of Ill. Dept. of Employment Security.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and GRANT, Senior District Judge.[1]

BAUER, Chief Judge.

The National Labor Relations Board ("NLRB" or "the Board") sued the State of Illinois Department of Employment Security ("IDES") for violations of Section 8 of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 158. The NLRB claims that Section 900D of the Illinois

---

**1.** The Honorable Robert A. Grant, Senior Judge of the United States District Court for the North- ern District of Indiana, is sitting by designation.

Unemployment Insurance Act, Ill.Rev. Stat., ch. 48, para. 490 D (1989) ("Section 900 D"), is preempted by the NLRB's exclusive jurisdiction to remedy unfair labor practices as prescribed in the NLRA. The district court awarded the NLRB injunctive relief, declaratory relief, and costs. 777 F.Supp. 1416. IDES appeals. We affirm.

## I.

On July 25, 1990, the Southern Illinois Laborers District Council ("the Council") filed an unfair labor practice charge with the NLRB against Special Mines Services, Inc. ("SMS"). The Council alleged that SMS discharged two employees and laid off four employees in violation of Section 8 of the NLRA, 29 U.S.C. § 158. The Council later amended its charge to allege additional violations of the NLRA.

On September 28, 1990, the NLRB regional director approved an informal settlement agreement which provided back pay totaling $6,130.47 to the six employees. To comply with the agreement, SMS sent checks payable to the employees to the NLRB. Some of the checks were payable jointly to an employee and the Director of IDES. The jointly payable amounts reflected the amount of unemployment insurance benefits paid to the employees during their periods of unemployment.

The Board refused to accept the checks and returned them to SMS. By letter dated November 8, 1990, counsel for SMS informed the NLRB that SMS issued the joint payee checks in compliance with Section 900 D.[2] On November 14, 1990, Gregory J. Ramel of the IDES Commissioner's Office advised the NLRB that "employers that make payments in the form of backpay to individuals who had received Illinois unemployment insurance benefits during

the period covered by the backpay are subject to the provisions of Section 900 D." Ramel also expressed IDES' view that "no federal preemption question is raised by our position." Following Ramel's letter, SMS re-issued the back pay checks. The checks again complied with Section 900 D's joint payee requirement.

The NLRB filed the instant suit for declaratory and injunctive relief against IDES. The district court enjoined IDES from enforcing Section 900 D as it pertains to SMS, declared that Section 900 D is preempted to the extent that it involves regulating or restraining conduct governed exclusively by the NLRA, and awarded costs to the NLRB. IDES appeals.

## II.

### A. Standard of Review

A district court must make both findings of fact and conclusions of law when deciding whether to award injunctive relief. *Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 674 (7th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988). We review the findings of fact under the clearly erroneous standard. We review the district court's legal conclusions *de novo*. *Id.*; *United States v. Kaun*, 827 F.2d 1144, 1148 (7th Cir.1987). With these standards in mind, we review the district court's decision.

### B. Preemption

The Supremacy Clause of the United States Constitution provides that "the Laws of the United States which shall be made in Pursuance [of the Constitution] ... shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2.[3] "There can be

---

**2.** Section 900 D states:

Whenever, by reason of a back pay award made by any governmental agency or pursuant to arbitration proceedings, or by reason of a payment of wages wrongfully withheld by an employing unit, an individual has received wages for weeks with respect to which he has received benefits, the amount of such benefits may be recouped or otherwise recovered as herein provided. An employing unit making a back pay award to an individual for weeks

with respect to which he has received benefits shall make the back pay award by check payable jointly to the individual and to the Director.

Ill.Rev.Stat., ch. 48, para. 490 D (1989).

**3.** In full, the Supremacy Clause states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United

no dispute that the Supremacy Clause invalidates all state laws that conflict or interfere with an Act of Congress." *Rose v. Arkansas State Police,* 479 U.S. 1, 3, 107 S.Ct. 334, 334, 93 L.Ed.2d 183 (1986). The Supremacy Clause is the source of Congress' power to preempt state law. *Rayner v. Smirl,* 873 F.2d 60, 64 (4th Cir.), *cert. denied,* 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989).

The NLRA is an Act of Congress made "in pursuance" of the Constitution. As such, it is the "supreme Law of the Land." We must decide, therefore, whether Section 900 D, as applied here, conflicts or interferes with the NLRA. If it does, it is preempted by the NLRA. "In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress." *California Federal Savings & Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). *See also Wisconsin Dep't of Indus., Labor and Human Relations v. Gould, Inc.,* 475 U.S. 282, 290, 106 S.Ct. 1057, 1063, 89 L.Ed.2d 223 (1986) (Congressional purpose is the "ultimate touchstone" of preemption analysis.). We therefore begin our preemption analysis by examining the purpose of the NLRA.

The NLRA "is a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce." *Nash v. Florida Indus. Comm'n,* 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438 (1967). "[I]n passing the NLRA Congress largely displaced state regulation of industrial relations." *Gould,* 475 U.S. at 286, 106 S.Ct. at 1061. The NLRA reflects congressional intent to create a uniform, nationwide body of labor law interpreted and administered by a centralized expert agency—the NLRB. *New York Telephone Co. v. New York Dep't of Labor,* 440 U.S. 519, 527, 99 S.Ct. 1328, 1334, 59 L.Ed.2d 553 (1979). The Act vests

the NLRB with primary jurisdiction over unfair labor practices. *See* 29 U.S.C. § 158. As such, the NLRA "forecloses overlapping state enforcement of the prohibitions in Section 8 of the Act." *New York Telephone,* 440 U.S. at 519, 99 S.Ct. at 1328.

The United States Supreme Court has developed two NLRA preemption doctrines. The first was set forth in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). There, the Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245, 79 S.Ct. at 780.[4] The Court added that "[i]f the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction." *Id.* "The *Garmon* rule is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of 'the integrated scheme of regulation' established by the NLRA." *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 613, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1986) (*Golden State I*) (citation omitted). Thus, the NLRB has exclusive jurisdiction to remedy unfair labor practices by employers and unions. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 108, 110 S.Ct. 444, 449, 107 L.Ed.2d 420 (1989) (*Golden State II*). Although judicially created, the *Garmon* doctrine effectuates congressional intent. *Quinn v. Digiulian,* 739 F.2d 637, 642 (D.C.Cir.1984).

The Court established the second (although related) preemption doctrine in *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548,

States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

**4.** Section 7 of the NLRA, 29 U.S.C. § 157, guarantees employees the right to self-organization and collective bargaining.

49 L.Ed.2d 396 (1976). *Machinists* preemption "protects against state interference with policies implicated by the structure of the Act itself, by pre-empting state law and state causes of action concerning conduct that Congress intended to be unregulated." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985); *Douglas v. American Info. Technologies Corp.*, 877 F.2d 565, 569 n. 4 (7th Cir.1989). *See also, e.g., Golden State I*, 475 U.S. at 618, 106 S.Ct. at 1401 (under *Machinists*, NLRA preempted city from conditioning transportation employer's franchise renewal on the settlement of a labor dispute).

This case involves *Garmon* preemption because the NLRB has decided that SMS' conduct is prohibited by Section 8 of the Act. Unless an exception to *Garmon* applies, then, the NLRA preempts Section 900 D in this case.

■ There are two notable exceptions to the *Garmon* preemption doctrine. Even if conduct is arguably prohibited by Section 8 of the NLRA, a party's claim is not preempted under *Garmon* if (1) the activity regulated is merely a peripheral concern of the labor laws or (2) if the conduct touches interests so deeply rooted in local feeling that preemption cannot be inferred absent compelling congressional direction. *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 660–61 (7th Cir.1992). *See also Garmon*, 359 U.S. at 243–44, 79 S.Ct. at 779; *Kolentus v. Avco Corp.*, 798 F.2d 949, 961 (7th Cir.1986), *cert. denied*, 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987). When determining whether these exceptions apply, we must balance the state's interest in remedying the effects of the challenged conduct against both the interference with the NLRB's ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits. *Id.* at 961.

■ Section 900 D of the Illinois Unemployment Insurance Act, as it would be applied here, does not fall within the exceptions to NLRA preemption. IDES argues that Section 900 D does not actually or arguably regulate conduct that is subject to Section 7 or prohibited by Section 8 of the NLRA. IDES maintains that the joint payee requirement of Section 900 D merely enables the State to recoup benefits it previously remitted to the employees and does not interfere with the Board's authority. *Id.* at 38. We disagree.

The *Garmon* and *Machinists* preemption doctrines teach that the NLRB has exclusive jurisdiction to determine whether conduct is covered by the NLRA. *See Talbot*, 961 F.2d at 659. Where, as here, the case involves an unfair labor practice prohibited by Section 8 of the Act, the NLRB has broad authority to determine the appropriate remedy for wronged employees. The State is excluded. *See Garmon*, 359 U.S. at 245, 79 S.Ct. at 779. Board authority over back pay awards is not merely of peripheral concern to the Act. Rather, the Board's broad authority to remedy unfair labor practices is central to its purpose. Further, enforcement of Section 900 D by issuing joint payee checks in satisfaction of the back pay award would not be related to any conduct touching "interests so deeply rooted in local feeling that preemption cannot be inferred absent compelling congressional direction." *Talbot*, 961 F.2d at 660–61. For these reasons, the exceptions to NLRA preemption do not apply. IDES does, however, remain free to recoup the benefits it paid the employees, but its collection efforts must be independent of the Board's order to the offending employer.

The instant case is analogous to *Lenz v. NLRB*, 915 F.2d 388 (8th Cir.1990). There, two beneficiaries of a NLRB back pay settlement were in arrears on child support payments. *Id.* at 389. The Child Support Recovery Unit of the State of Iowa sued to compel the NLRB to garnish the award. *Id.* The district court refused to allow garnishment of the back pay award and the Eighth Circuit affirmed. *Id.* at 390. The court noted that "[o]ther courts have recognized the need for maintaining the integrity of the Board's mission and have refused to allow garnishment of Board funds." *Id.*

As in *Lenz*, the Section 900 D joint payee requirement interferes with the Board's mission to remedy unfair labor disputes.

The *Lenz* court found that "[p]ermitting the garnishment requested by plaintiffs would burden the Board with responsibilities which would detract from" the Board's duty "to eliminate the causes of labor disputes burdening interstate and foreign commerce." *Id.* Likewise, we hold that the joint payee requirement of Section 900 D, if enforced as IDES requests, would detract from and unduly burden the Board's duty to remedy unfair labor practices.

IDES cites a series of cases involving state unemployment statutes interacting with the NLRA. IDES claims that these cases support its position that the NLRA does not preempt Section 900 D. We note, however, that none of these cases involves state interference with a back pay award in an unfair labor practice dispute. For example, IDES cites *New York Telephone Co. v. New York State Dep't of Labor*, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979). There, the Court held that the NLRA did not preempt a New York statute that authorized striking employees to receive unemployment benefits. *New York Telephone*, unlike the present case, did not present a situation in which a state agency or statute interfered with the NLRB's authority to remedy unfair labor practices. As the Court there observed, *New York Telephone* did "not involve any attempt by the State to regulate or prohibit private conduct in the labor-management field." *Id.* at 532, 99 S.Ct. at 1337. If applied in this case, however, Section 900 D would require the direct regulation by IDES of private conduct—an employer paying a back pay award—in the labor-management field. *New York Telephone* does nothing more than allow the states to pay unemployment compensation to a certain class of workers—those on strike.

IDES also relies on *Baker v. General Motors Corp.*, 478 U.S. 621, 106 S.Ct. 3129, 92 L.Ed.2d 504 (1986). In *Baker*, the Court considered the validity of a Michigan statute that rendered employees ineligible to receive unemployment compensation if they provided financing for a strike that caused their unemployment. *Id.* at 622, 106 S.Ct. at 3129. The Court had to decide whether Section 7 of the NLRA implicitly prohibited Michigan's statutory disqualification. *Id.* The Court held that it did not and concluded that Congress "did not intend to pre-empt the States' power to make the policy choice between paying or denying unemployment compensation to strikers." *Id.* at 634, 106 S.Ct. at 3137. The Court noted that "the fact that the temporary unemployment is entirely attributable to the voluntary use of the Union's bargaining resources—*untainted by unlawful conduct by the employer*—is a sufficient reason for allowing the State to decide whether or not to pay unemployment benefits." *Id.* at 663, 106 S.Ct. at 3138 (emphasis added). Thus, as in *New York Telephone*, there was no unfair labor charge against any party. Also, like *New York Telephone*, *Baker* stands for the proposition that States have discretion to grant or deny unemployment compensation to striking workers. This does not mean, however, that States can interfere with the NLRB's authority to remedy unfair labor practices through back pay awards to injured employees. *See NLRB v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951) (NLRB has discretion to refuse to deduct state unemployment compensation from back pay award); *NLRB v. Pan Scape Corp.*, 607 F.2d 198 (7th Cir. 1979) (enforcing NLRB order that awarded back pay without deducting unemployment compensation paid to workers); *Winn-Dixie Stores, Inc. v. NLRB*, 413 F.2d 1008 (5th Cir.1969) (same).

Finally, IDES cites *Certified Midwest, Inc. v. Local Union No. 738*, 686 F.Supp. 189 (N.D.Ill.1988), to support its position that the joint payee requirement of Section 900 D survives scrutiny under preemption theory. In *Certified Midwest*, the court had to decide, *inter alia*, whether a wronged worker was obligated by Section 900 D to return money that he received in state unemployment benefits. The court enforced Section 900 D and required a portion of the employee's total award to be issued in the form of a two-party check to the employee and the Director of IDES. *Id.* at 193.

*Certified Midwest* is distinguishable from the present case for two reasons. First, *Certified Midwest* did not involve, as this case does, an unfair labor practice prohibited by Section 8 of the NLRA. Rather, the dispute in *Certified Midwest* concerned the enforcement of an arbitration award. Second, the case arose under the Labor–Management Relations Act, not the NLRA. Put simply, *Certified Midwest,* unlike the present dispute, did not present any threat to the exclusive authority of the NLRB to remedy unfair labor practice disputes. *See Garmon,* 359 U.S. at 245, 79 S.Ct. at 779.

### III.

The NLRB has decided that SMS' conduct is prohibited by Section 8 of the NLRA. Accordingly, as far as IDES is concerned, "the matter is at an end, and the State[ ] [is] ousted of all jurisdiction." *Id.* The judgment of the district court is therefore

AFFIRMED.