CAROLE J. KATZ, Indiv. and on Behalf of a Class of Similarly Situated Individuals, Plaintiffs-Appellants and Cross-Appellees, v. WESTLAWN CEMETERY ASSOCIATION, INC., Indiv. and on Behalf of All Others Similarly Situated, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (3rd Division)    No. 1—95—0524

Opinion filed November 20, 1996.

Kenneth A. Wexler, Patrick E. Cafferty, and Jennifer A. Winter, all of Chicago, for appellants.

Frederic S. Lane, Gerald E. Fradin, John A. McDonald, Bedell A. Tippins, Michael C. Neubauer, Eric H. Jostock, Howard Jump, Patrick H. Norris, Marthe C. Purmal, Raymond J. Kelly, James R. Jenkins, Allen S. Gerrard, Robert N. Lupschultz, Keven White, Susan A. Pipal, Brian J. Gold, Lisa D. Freeman, Michael C. Borders, Thomas H. Fegan, Kelly N. Warnick, H. Patrick Morris, and Jack Joseph, all of Chicago, Harvey I. Lapin and Bennett R. Klasky, both of Northbrook, and Robert Geraghty, of Winnetka, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Plaintiff Carole J. Katz, individually and on behalf of a class of similarly situated individuals, filed this class action against defendants Westlawn Cemetery Association, Inc., on behalf of all others similarly situated, Acacia Park Cemetery and Mausoleum Corporation, Mount Auburn Memorial Park, Inc., Chapel Hill Gardens (South), Chapel Hill Gardens (West), Clarendon Hills Cemetery, Concordia Cemetery, Eden Cemetery, Elm Lawn Cemetery, Elmwood Cemetery and Mausoleum Company, Graceland Cemetery and Crematorium, Irving Park Cemetery, Memorial Park Cemetery, Lincoln Cemetery, Montrose Cemetery Co., Mt. Emblem Cemetery, Mount Greenwood Cemetery Association, Mount Hope Cemetery Association, Inc., Oak Hill Cemetery, Oak Woods Cemetery Association, Ridgewood Cemetery Co., Rosehill Cemetery Co., Shalom Memorial Park, Randhill Park Cemetery Association, Inc., Woodlawn Cemetery of Chicago, Inc., Beverly Cemetery, Evergreen Cemetery & Mausoleum, and Cemeteries Association of Greater Chicago, Inc., a corporation. In her fifth amended complaint, Katz alleged intentional infliction of emotional distress (count I), tortious interference with property rights (count II), breach of contract (count III) and civil conspiracy (count IV). On January 6, 1995, the trial court granted

defendants' motion to completely dismiss the complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1994)); it is from this order that plaintiff appeals to this court pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 301 (155 Ill. 2d R. 301). Defendants cross-appeal from the same order pursuant to Supreme Court Rule 303(a)(3) (155 Ill. 2d R. 303(a)(3)).

For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

The genesis of this action is a labor strike by Chicago-area gravediggers, represented by their union, Local Union 106, Service Employees International Union, AFL-CIO, against the 27 defendant cemeteries and the subsequent lockout of strikers by defendants. On December 19, 1991, after contract renewal negotiations between defendants, represented by their collective bargaining agent, the Cemeteries Association of Greater Chicago, Inc. (hereinafter the Association), and the union broke down, the union went on strike against four defendant cemeteries: Beverly Cemetery, Oak Hill Cemetery, Lincoln Cemetery and Memorial Park Cemetery. In response, defendants locked out their union employees. Consequently, burials in the ordinary course of business ceased.

On January 3, 1992, Mrs. Rose Michaels, plaintiff's mother and an Orthodox Jew, passed away. In 1973, Mrs. Michaels and her husband had purchased burial plots at Westlawn Cemetery. Orthodox Jewish religious tradition requires burial of the dead within 24 hours of death. During the lockout, plaintiff requested that her mother be buried at Westlawn Cemetery, which Westlawn allegedly refused to do due to the lockout. Consequently, plaintiff's family was unable to bury Mrs. Michaels in keeping with Orthodox Jewish tradition. The instant litigation followed.

## ISSUES PRESENTED FOR REVIEW

On appeal, plaintiff posits that: (1) the trial court erred in holding that she did not have standing to sue the alleged co-conspirators for tortious acts that resulted in her alleged injury; (2) the trial court erred in holding that her allegations of civil conspiracy were not stated with sufficient specificity; (3) the trial court erred in holding that her claim for intentional infliction of emotional distress was time-barred; and (4) the trial court erred in holding that her claim for intentional infliction of emotional distress and tortious interference with property rights were preempted by the National Labor Relations Act (29 U.S.C. § 151 et seq. (1988)).

## OPINION

From the outset of their briefs, defendants argue that all plaintiff's claims are preempted by the National Labor Relations Act (NLRA) (29 U.S.C. § 151 *et seq.* (1988)). We note that plaintiff has not appealed from the trial court's ruling that her breach of contract claim in count III was preempted, and, therefore, we find the issue has been waived. See *Jordan v. Civil Service Comm'n*, 246 Ill. App. 3d 1047 (1993). Accordingly, we express no opinion herein as to the viability of such a claim. Nevertheless, we agree with defendants that the NLRA preempted plaintiff's tort claims in counts I, II and IV and, thus, on *de novo* review affirm the judgment of the circuit court.

■ The supremacy clause of the United States Constitution provides that the federal constitution, federal statutes and treaties "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, the supremacy clause forbids state encroachment on areas regulated by Congress, whether Congress' mandate is "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305, 1309 (1977). The NLRA, as an act of Congress, is the supreme law of the land and necessarily preempts any conflicting state law. *Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Employees v. Wisconsin Employment Relations Board*, 340 U.S. 383, 95 L. Ed. 364, 71 S. Ct. 359 (1951).

■ The NLRA reflects a congressional intent to create a national, uniform body of law regulating labor relations. *New York Telephone Co. v. New York State Department of Labor*, 440 U.S. 519, 59 L. Ed. 2d 553, 99 S. Ct. 1328 (1979); *Cannon v. Edgar*, 33 F.3d 880 (7th Cir. 1994). The NLRA protects from state interference a labor union's right to strike an employer and withhold the labor of its members. 29 U.S.C. §§ 158, 159 (1988); *National Labor Relations Board v. Drivers, Chauffeurs, Helpers Local Union No. 639*, 362 U.S. 274, 4 L. Ed. 2d 710, 80 S. Ct. 706 (1960). The NLRA similarly protects an employer's use of both defensive (*National Labor Relations Board v. Truck Drivers Local Union No. 449*, 353 U.S. 87, 1 L. Ed. 2d 676, 77 S. Ct. 643 (1957)) and offensive (*American Ship Building Co. v. National Labor Relations Board*, 380 U.S. 300, 13 L. Ed. 2d 855, 85 S. Ct. 955 (1965)) lockouts as a proper economic weapon, whereby the employer may withhold employment either to resist its employees' demands or to gain concessions from them. 29 U.S.C. § 158(d) (1988); *National Labor Relations Board v. Truck Drivers Local No. 449*, 353 U.S. at 92-93, 1 L. Ed. 2d at 679-80, 77 S. Ct. at 645-46.

■ The Supreme Court has enunciated two preemption doctrines invalidating state laws that interfere with the NLRA's goals. First, *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959) (the *Garmon* doctrine), and its progeny state that state laws may not interfere with conduct regulated or even arguably regulated by the NLRA, including collective bargaining. *Building & Construction Trades Council v. Associated Builders & Contractors of Massachusetts/ Rhode Island, Inc.*, 507 U.S. 218, 122 L. Ed. 2d 565, 113 S. Ct. 1190 (1993). The second doctrine, created in *Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976) (the *Machinists* doctrine), holds that state laws may not interfere with the balance of power between unions and employers established by federal law, including those areas that Congress left under the control of the free play of economic forces. *Building & Construction Trades Council*, 507 U.S. 218, 122 L. Ed. 2d 565, 113 S. Ct. 1190. We agree with the circuit court that, under either of these two doctrines, plaintiff's claims in counts I, II and IV were preempted by the NLRA.

In *Garmon*, an employer brought suit against a union seeking an injunction and damages after the union picketed the employer's place of business. The picketing was designed to compel the employer to execute a labor contract by exerting pressure on the employer's customers and suppliers. The supreme court of California affirmed the state trial court's judgment awarding the employer compensatory damages based on state tort law.

The United States Supreme Court reversed, holding that where the activities a state purports to regulate are even arguably within the ambit of the NLRA, state jurisdiction must yield in order to prevent the potential frustration of national purposes. *Garmon*, 359 U.S. at 244, 3 L. Ed. 2d at 782-83, 79 S. Ct. at 779. The Supreme Court noted that state law is preempted whether a state has acted through "laws of broad general application" or "laws specifically directed towards the governance of industrial relations." *Garmon*, 359 U.S. at 244, 3 L. Ed. 2d at 782, 79 S. Ct. at 779. Illinois courts have consistently recognized and applied the *Garmon* doctrine. See, e.g., *People v. Federal Tool & Plastics*, 62 Ill. 2d 549 (1975); *NDK Corp. v. Local 1550*, 128 Ill. App. 3d 207 (1984).

The *Garmon* court created two narrow exceptions to its holding, finding that the NLRA does not preempt state remedies: (1) where the activity regulated was "a merely peripheral concern" to the federal labor laws, or (2) where the regulated conduct "touched interests so deeply rooted in local feeling and responsibility that, in

the absence of compelling congressional direction, [it] could not [be] infer[red] that Congress had deprived the States of the power to act." *Garmon*, 359 U.S. at 243-44, 3 L. Ed. 2d at 782, 79 S. Ct. at 779.

The *Garmon* court found that the first exception did not apply because picketing is specifically protected by section 7 of the NLRA and, therefore, is not an activity of "merely peripheral concern" to the NLRA. *Garmon*, 359 U.S. at 245-47, 3 L. Ed. 2d at 783-84, 79 S. Ct. at 779-80. Similarly, the Supreme Court found that the second exception did not apply because the case did not involve a state interest deeply rooted in local feeling and responsibility such as the "maintenance of domestic peace" in the face of "conduct marked by violence and imminent threats to the public order." *Garmon*, 359 U.S. at 247, 3 L. Ed. 2d at 784, 79 S. Ct. at 781.

■ In the case *sub judice*, plaintiff concedes that her claims, arising from a lockout protected by the NLRA, are "arguably subject to the jurisdiction of the" National Labor Relations Board but contends that her claims are not preempted because they arise from "interests deeply rooted in local feeling and responsibility." Thus, plaintiff asserts that "[i]t is hard to imagine anything more deeply rooted in local feeling and responsibility than burying the dead in accordance with religious and social customs." We disagree.

In *Cannon v. Edgar*, 33 F.3d 880 (7th Cir. 1994), the seventh circuit directly rejected plaintiff's contention. In *Cannon*, the federal appeals court invalidated the Burial Rights Act (820 ILCS 130/0.01 *et seq.* (West 1994)), an act that was passed by the General Assembly in direct response to the labor dispute that is the subject of this litigation, which required cemeteries and gravediggers to negotiate for the establishment of a pool of workers designated to perform religiously required burials during labor disputes. The seventh circuit found the Burial Rights Act was preempted by the NLRA because it was an "invasion by a state into the collective bargaining process." *Cannon*, 33 F.3d at 884-86.

In so holding, the *Cannon* court found that the Burial Rights Act was not subject to either of the two *Garmon* exceptions:

"As to the first *Garmon* exception, the Burial Rights Act is not concerned with something peripheral to the NLRA. Indeed, performing burials, including burials during the course of a labor dispute, is the very subject that the cemeteries and the gravediggers negotiate about in the collective bargaining process.

And as to the second *Garmon* exception, there is nothing deeply rooted in local feeling that would allow Illinois to encroach on the process of collective bargaining in the manner directed by the Burial Rights Act. The interment of deceased persons is something

common to every community in the United States. The interment of the smaller category at issue here (particular religious groups) is not something deeply rooted in local feeling ***." 33 F.3d at 885.

Plaintiff submits that the *Cannon* court found the *Garmon* exceptions inapplicable because that case involved a civil statute rather than state criminal or tort law. We believe that argument misses the point. What is important here is the fact that plaintiff's allegations are inextricably linked to the labor dispute such that her claims would not exist but for that dispute.

In her fifth amended complaint, plaintiff alleges that, because Westlawn and the other cemeteries did not perform interments as a result of the labor dispute, *ipso facto* they committed the various torts. This is not the law. In addition, plaintiff alleges defendants' joint lockout of the union members to be a civil conspiracy; however, this is an activity clearly protected by the NLRA. Nowhere does plaintiff allege that any agent or employee of Westlawn Cemetery battered, insulted, defamed or committed any other tortious and/or criminal acts against her personally that traditionally would fall into the second *Garmon* exception. See, *e.g.*, *Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133 (7th Cir. 1987) (plaintiff union employee can sue his employer for defaming his wife's chastity). Accordingly, we find that none of plaintiff's tort claims fall within the exceptions to the *Garmon* doctrine. Therefore, the trial court did not err in dismissing plaintiff's complaint.

■ Alternatively, we find plaintiff's causes of action are preempted under the *Machinists* doctrine. In *Machinists*, the Supreme Court recognized that activities are protected by federal labor law not only where they are specifically regulated by the NLRA, but also where the activity involves a "permissible economic weapon" that Congress intended to be unrestricted by any governmental power. *Machinists*, 427 U.S. at 141, 49 L. Ed. 2d at 404, 96 S. Ct. at 2553-54. Because the NLRA seeks to leave disputes between management and labor to the "free play of economic forces" without state interference, any state cause of action that affects the balance of economic weapons available to labor and management is preempted. *Cannon*, 33 F.3d at 885.

A union's right to strike and an employer's right to lock out are among the most significant of economic weapons. In *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 89 L. Ed. 2d 616, 106 S. Ct. 1395 (1986), the Supreme Court explained, Congress left some forms of economic pressure unregulated, while it banned others. "States are therefore prohibited from imposing additional restrictions on economic weapons of self-help, such as strikes or lockouts

[citation] unless such restrictions presumably were contemplated by Congress." 475 U.S. at 614-15, 89 L. Ed. 2d at 624, 106 S. Ct. at 1399. The district court opinion in *Cannon* noted that the *Machinists* doctrine forbids the states from even "indirectly imposing additional burdens on economic weapons such as strikes and lockouts." *Cannon v. Edgar*, 825 F. Supp. 1349, 1360 (N.D. Ill. 1993), *aff'd*, 33 F.3d 880 (7th Cir. 1994).

In *United Steelworkers v. Bishop*, 598 F.2d 408 (5th Cir. 1979), a union struck and picketed a metals fabrication plant which was consequently unable to complete delivery of an order of steel to a customer. The customer filed a replevin action seeking delivery of the steel. After the district court required the factory to deliver the goods, the union argued on appeal that the district court lacked jurisdiction over the matter as it arose from a labor dispute. The fifth circuit applied *Machinists* and agreed that there was no jurisdiction to order the employer to release the steel and held that the district court had erroneously disarmed the labor union of a significant economic weapon and altered the bargaining stance of management and the union. *United Steelworkers*, 598 F.2d at 415. In the case *sub judice*, plaintiff's lawsuit is attempting to do exactly what the customer in *United Steelworkers* tried to do—use a state common law action to inject herself into a labor dispute and in the process deny both the union and the cemeteries of significant economic weapons, the power to strike and the power to lock out. This is impermissible. Thus, we hold no error was committed by the circuit court in dismissing plaintiff's cause under the *Machinists* doctrine.

In light of our disposition of plaintiff's appeal, we need not reach the issues raised by defendants in their cross-appeal, which were argued in the alternative had we reached a different disposition of plaintiff's appeal.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed *in toto*.

Affirmed.

CERDA and GALLAGHER, JJ., concur.