UNITED STEELWORKERS OF
AMERICA, AFL–CIO–CLC,
Plaintiff,

v.

ST. GABRIEL'S HOSPITAL, Catholic
Health Corporation, Franciscan Sister
Health Care, Inc. and St. Cloud Hospi-
tal, Defendants.

Civ. No. 5–94–117.

United States District Court,
D. Minnesota,
Fifth Division.

Dec. 20, 1994.

Scott Adams Higbee, John Gilbert Engberg, Peterson Engberg & Peterson, Minneapolis, MN, for plaintiff.

Eric L. Leonard, Briggs & Morgan, Minneapolis, MN, Michael John Galvin, Jr., Briggs & Morgan, St. Paul, MN, for St. Gabriel's Hosp., Catholic Health Corp., Franciscan Sisters Health Care, Inc.

Thomas Monroe Vogt, Felhaber Larson Fenlon & Vogt, St. Paul, MN, James Mushat Dawson, Felhaber Larson Fenlon & Vogt, Minneapolis, MN, for The St. Cloud Hosp.

Michael J. Vanselow, MN Atty. Gen., St. Paul, MN, for State of Minn.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiff's motion for injunctive relief and defendants' motion to dismiss or in the alternative for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated below the court denies plaintiff's motion for injunctive relief and grants defendants' motion to dismiss.[1]

---

1. Matters outside the pleadings have been presented to and considered by the court. In accordance with Fed.R.Civ.P. 12(b) and 56(c), defen-

## BACKGROUND

For almost three decades, St. Gabriel's Hospital ("St. Gabriel's") has operated a kidney dialysis unit in Little Falls, Minnesota. St. Gabriel's is a party to collective bargaining agreements with the United Steelworkers of America ("USWA" or "union") and the Minnesota Nurses Association, the organizations which represent the employees of the kidney dialysis unit. The collective bargaining agreement between the USWA and St. Gabriel's contains a successor clause which provides that:

> This Contract Agreement shall be binding upon any successors or assign of the Employer, and no terms, obligations and provisions herein contained shall be affected, modified, altered or changed in any respect whatsoever by the whole or partial consolidation, merger, sale, transfer or assignment of the Employer, or affected, modified, altered, or changed in any respect whatsoever by any change of any kind of the ownership or management of the Facility.

The expiration date of the agreement is September 30, 1995.[2]

In recent years, St. Gabriel's kidney dialysis unit has been operated at a loss. In 1992, Franciscan Sister Health Care, Inc., the parent organization of St. Gabriel's, investigated whether the kidney dialysis unit could be made profitable or should be sold or closed. In October 1993, Franciscan Sister Health Care sold its health care facilities to Catholic Health Corporation. St. Gabriel's continued studying alternatives for the kidney dialysis unit and, in early 1994, decided that selling the unit was the most viable option.

St. Gabriel's intends to sell its kidney dialysis unit to St. Cloud Hospital ("St. Cloud"). St. Cloud is a regional hospital with nearly ten times the patient capacity of St. Gabriel's. St. Cloud operates kidney dialysis units in the cities of St. Cloud and Brainerd. A letter of intent was entered into by St. Gabriel's and St. Cloud Hospital in early April 1994 and St. Gabriel's notified the USWA of the possible sale.

The letter of intent resulted in a sale agreement which was executed on June 30, 1994. St. Gabriel's furnished a copy of the collective bargaining agreement to St. Cloud during the negotiations of the sale. St. Cloud is non-union and does not intend to honor the terms and conditions of the collective bargaining agreement. St. Cloud plans to integrate the Little Falls kidney dialysis unit into its existing operations. St. Gabriel's tried to provide for job protection by providing jobs for all kidney dialysis unit employees who did not accept positions with St. Cloud. The sale was scheduled to close on September 12, 1994. A few days earlier, employees who had not obtained jobs with St. Cloud were assured of jobs and positions with St. Gabriel's for a minimum of 90 days at the same or similar hours and rates of pay.

The USWA brought this action seeking a declaration that St. Cloud is bound by the collective bargaining agreement pursuant to Minnesota's successor statute. The statute makes a new employer liable for the obligations of a predecessor's collective bargaining agreement where the agreement contains a successor clause. Minn.Stat. § 338.01, *et seq.* The successor statute provides in part:

> Where a collective bargaining agreement between an employer and a labor organization contains a clause regulating the rights and obligations of a new employer, that clause shall be binding upon and enforceable against any new employer until the expiration date of the agreement. That clause shall not be binding upon or enforceable against any new employer for more than three years from the effective date of the collective bargaining agreement between the contracting employer and the labor organization.

Minn.Stat. § 338.02, subd. 2. The statute defines a "new employer" as:

> Any purchaser, assignee, or transferee of a business the employees of which are sub-

---

dants' motion to dismiss is treated as one for summary judgment.

**2.** The agreement between St. Gabriel's and the Minnesota Nurses Association contains similar provisions. The Minnesota Nurses Association, however, is not a party to this action.

ject to a collective bargaining agreement, if the purchaser, assignee, or transferee conducts or will conduct substantially the same business operation, or offer the same service, and use the same physical facilities, as the contracting employer.

*Id.* § 338.02, subd. 1. The only exception in the statute relates to businesses in receivership or bankruptcy and is not applicable here. *See id.* § 338.02, subd. 4.

The USWA seeks to enjoin St. Gabriel's and St. Cloud from closing the sale of the kidney dialysis unit unless the collective bargaining agreement is honored. Defendants represent that St. Cloud will not complete the purchase if it is forced to assume the collective bargaining agreement and the kidney dialysis unit will likely be closed. Defendants contend that Minnesota's successor statute is preempted by federal labor law. The USWA and the intervenor, State of Minnesota (collectively "plaintiffs"), respond that the state legislation regulates in an area of deep local concern and is not preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.* The validity of a state successor statute is a question of first impression.[3]

## DISCUSSION

### 1. Federal Successorship Law

The term "successor" is not very meaningful in the abstract; every new employer is a successor in the sense that it succeeded to the operation of a business entity formerly operated by another employer. The NLRA does not define successorship or address the labor law obligations of a new employer to the employees of its predecessor. Rather, the federal common law of successorship has developed primarily through Supreme Court decisions.

Successor status under federal labor law turns on whether there is "substantial continuity of identity in the business enterprise." *John Wiley & Sons v. Livingston,* 376 U.S. 543, 551, 84 S.Ct. 909, 915, 11 L.Ed.2d 898 (1964). Where a new employer operates essentially the same business without substantial change and hires a majority of its employees from the predecessor, it is generally deemed a successor under federal labor law. *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 41, 107 S.Ct. 2225, 2234–35, 96 L.Ed.2d 22 (1987).[4] A successor employer may be compelled to bargain with an incumbent union or to arbitrate the extent of its obligations. *Wiley,* 376 U.S. at 548–51, 84 S.Ct. at 913–16 (1964) (duty to arbitrate); *NLRB v. Burns Security Services,* 406 U.S. 272, 278–81, 92 S.Ct. 1571, 1577–79, 32 L.Ed.2d 61 (1972) (duty to recognize and bargain with union representing predecessor's employees); *Fall River Dyeing,* 482 U.S. at 41, 107 S.Ct. at 2234–35 (same). The existence of a bargaining relationship, however, "does not compel either party to agree to a proposal or require the making of a concession." 29 U.S.C. § 158(d). Rather, Congress left those matters to free collective bargaining. *Burns,* 406 U.S. at 282, 92 S.Ct. at 1579.

In *Burns,* the successful bidder on a contract to provide security services at a Lockheed Aircraft plant took a majority of its employees from the ranks of the guards employed at the plant by the previous contractor, Wackenhut. Wackenhut had entered into a collective bargaining agreement with the United Plant Guard Workers (UPG). Burns refused to recognize UPG or honor the agreement and denied any obligation to bargain with UPG. Burns told the guards that, as a condition of their employment, they

---

3. Whether federal labor law preempts successor statutes is an issue of importance to several states. Illinois has a successor statute identical to the one at issue here. *See* Ill.Ann.Stat. ch. 820, § 10/1. Other states have successor statutes which make a successor liable for a predecessor's collective bargaining agreement regardless of whether the collective bargaining agreement contains a successor clause. *See* Del.Code.Ann. tit. 19, § 706; 15 Pa.Cons.Stat.Ann. § 2587; R.I.Gen.Laws § 28-7-19.1. Some states have avoided the thorny preemption issue by specifi-

cally exempting employers who are subject to the NLRA. *See* Cal.Lab.Code § 1127(c); Mass.Gen. Laws Ann. ch. 149, § 179C; and Ohio Rev.Code Ann. § 4113.30(D)(2).

4. A new employer, of course, has the right to not hire any of the employees of its predecessor. *See, e.g., Howard Johnson Co. v. Hotel Employees,* 417 U.S. 249, 261–62, 94 S.Ct. 2236, 2242–44, 41 L.Ed.2d 46 (1974).

would have to join the union with which Burns already had collective bargaining agreements at other locations. The National Labor Relations Board ("Board") ordered Burns to bargain with the incumbent union. The Board also found that Burns, as a successor employer, was bound by the terms of the existing collective bargaining agreement. The Board reasoned that:

[T]he stability of labor relations will be jeopardized and ... employees will face uncertainty and a gap in the bargained-for terms and conditions of employment, as well as the possible loss of advantages gained by prior negotiations, unless the new employer is held to have assumed, as a matter of federal labor law, the obligations under the contract entered into by the former employer.

*Burns*, 406 U.S. at 285, 92 S.Ct. at 1581.

The Supreme Court agreed that Burns had hired enough of Wackenhut's employees to require it to bargain with the union as commanded by the NLRA. The Court held, however, that Burns could not be compelled to honor the terms of Wackenhut's collective bargaining agreement against its will. Although preventing industrial strife is an important aim of federal labor legislation, the Court noted that "Congress has not chosen to make the bargaining freedom of employers and unions totally subordinate to this goal." *Id.* at 287, 92 S.Ct. at 1582. The Court stated that:

This bargaining freedom means both that parties need not make any concessions as a result of Government compulsion and that they are free from having contract provisions imposed upon them against their will. Here, Burns had notice of the existence of the Wackenhut collective-bargaining contract, but it did not consent to be bound by it. The source of its duty to bargain with the union is not the collective-bargaining contract but the fact that it voluntarily took over a bargaining unit that was largely intact ... Nothing in its actions, however, indicated that Burns was assuming the obligations of the contract, and 'allowing the Board to compel agreement when the parties themselves are unable to agree would violate the fundamental premise on which the Act is based—private bargaining under governmental supervision of the procedure alone, without any official compulsion over the actual terms of the contract.'

*Id.* (quoting *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 108, 90 S.Ct. 821, 826, 25 L.Ed.2d 146 (1970)). The Supreme Court also emphasized that Congress intended "to allow the balance of bargaining advantage to be set by economic power realities." *Id.* 406 U.S. at 288, 92 S.Ct. at 1582.

One year later, in *Howard Johnson*, the Supreme Court considered whether a bargained-for successor clause impacts a purchaser's liability under an existing collective bargaining agreement. A successor clause purports to bind a purchaser to the terms of an existing collective bargaining agreement in the event of a transfer of the business. Howard Johnson purchased the assets of a motor lodge and restaurant. The previous owner had entered into collective bargaining agreements with the union representing its employees. The agreements provided that they would be binding on the owner's "successors, assigns, purchasers, lessees or transferees." Howard Johnson hired only a small fraction of the previous owner's employees.

Howard Johnson refused to recognize the union or assume any obligation under the labor agreements. The union sought to compel Howard Johnson to arbitrate the extent of its legal obligations under the existing collective bargaining agreements. Because there was no substantial continuity in the work force after the change of ownership, the Supreme Court refused to compel arbitration. *Id.* 417 U.S. at 263, 94 S.Ct. at 2243–44. The Court also held that the existence of a successor clause did not bind the purchaser "either to the substantive terms of the agreements or to the arbitration clauses thereof" unless the purchaser expressly or impliedly assumed the collective bargaining agreement or substantial continuity existed between the enterprises. *Id.* at 258 n. 3, 94 S.Ct. at 2241 n. 3.

## 2. Federal Labor Law Preemption

The preemptive effect of federal labor law stems from the Supremacy Clause.

Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981). The NLRA contains no express preemption provision. Thus, consistent with general principles of preemption, a court should not find preemption "unless [the provision at issue] conflicts with federal law or would frustrate the federal scheme, or unless [the court] discern[s] from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." *Building & Constr. Trades Council v. Associated Builders,* —— U.S. ——, ——, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565 (1993) (quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747–48, 105 S.Ct. 2380, 2393–94, 85 L.Ed.2d 728 (1985)).

 Two distinct preemption doctrines define the "broadly preemptive scope of the NLRA." *Int'l Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 389, 106 S.Ct. 1904, 1911, 90 L.Ed.2d 389 (1986); *see Building & Constr. Trades Council,* —— U.S. at ——, 113 S.Ct. at 1194–95 (discussing standards for preemption under the NLRA). The first, "*Garmon* preemption," prohibits state regulation of activities that are protected by section 7 of the NLRA or constitute an unfair labor practice under section 8. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). *Garmon* preemption also forbids state regulation of activities that the NLRA arguably protects or prohibits. *Id.; Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 613, 106 S.Ct. 1395, 1397–98, 89 L.Ed.2d 616 (1986).

 The *Garmon* rule is intended to prevent conflict between state and local regulation and the integrated scheme of regulation established by the NLRA. *Id.* 359 U.S. at 247, 79 S.Ct. at 780–81. The Supreme Court has also articulated two limited exceptions to the broad preemptive power of the NLRA. Under these exceptions, States may regulate activity which is only a "peripheral concern" of the NLRA or conduct which touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [the court] could not infer that Congress had deprived the States of the power to act." *Id.* at 243–44, 79 S.Ct. at 779.

 A second preemption principle, "*Machinists* preemption," prohibits state regulation of areas that Congress intended " 'to be controlled by the free play of economic forces.' " *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976) (quoting *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971)). Under this preemption principle, states cannot regulate the economic weapons that are part and parcel of the collective bargaining process. Resort to economic weapons is the right of the employer as well as the employee and the "State may not prohibit the use of such weapons or add to an employer's federal legal obligations in collective bargaining any more than in the case of employees." *Id.* 427 U.S. at 147, 92 S.Ct. at 2557 (quotations omitted).

In devising the NLRA, Congress chose to regulate some aspects of labor activities and to leave others " 'unrestricted by *any* governmental power to regulate.' " *Id.* at 145, 92 S.Ct. at 255 (quoting *NLRB v. Insurance Agents,* 361 U.S. 477, 488, 80 S.Ct. 419, 426–27, 4 L.Ed.2d 454 (1960)) (emphasis added). By prohibiting specific economic weapons and consciously deciding not to regulate others, Congress struck a balance " 'between the uncontrolled power of management and labor to further their respective interests.' " *Id.* 427 U.S. at 146, 92 S.Ct. at 2556 (quoting *Teamsters Union v. Morton,* 377 U.S. 252, 258–59, 84 S.Ct. 1253, 1257–58, 12 L.Ed.2d 280 (1964)). States "are without authority to attempt to introduce some standard of properly 'balanced' bargaining power, or to define what economic sanctions might be permitted negotiating parties in an 'ideal' or 'balanced' state of collective bargaining." *Id.* 427 U.S. at 150, 92 S.Ct. at 2557–58 (quotations and footnote omitted).

### 3. The Constitutionality of Minnesota's Successor Statute

The Minnesota successor statute was passed in 1990 as part of legislation designed

to prevent hostile takeover of domestic firms and to address worker dislocation caused by merger and acquisition activity in the 1980s. The Minnesota legislature concluded that unions could not adequately protect job security under federal successorship law and sought to remedy the situation. Minnesota's successor statute makes existing collective bargaining agreements that contain successor clauses binding against "new employers" for not more than three years from the effective date of the agreement. Minn.Stat. § 338.02, subd. 2.

The term "new employers" is defined broadly to include any purchaser that "conducts or will conduct substantially the same business operation ... and use the same physical facilities, as the contracting employer." *Id.* § 338.02, subd. 1. This definition omits the continuity in the work force requirement identified by the Supreme Court as the most important determinant of successor status under the NLRA. The statute also requires the predecessor to include in the purchase agreement a statement that the new employer is bound by the successor clause. The collective bargaining agreement is binding on the new employer, however, even if the predecessor fails to fulfill its duty to disclose.[5] The stated purpose of the successor statute "is to assist in ensuring that the mutual promises in employment contracts are honored and enforced." Minn. Stat. § 338.01.[6]

The court finds that Minnesota's successor statute is preempted under the *Garmon* principle. The statute is an impermissible intrusion by the State of Minnesota into the collective bargaining process. Section 8(d) of the NLRA "does not compel either party to agree to a proposal or require the making of a concession." 29 U.S.C. § 158(d). "This bargaining freedom means both that parties need not make any concessions as a result of Government compulsion and that they are free from having contract provisions imposed upon them against their will." *Burns,* 406 U.S. at 287, 92 S.Ct. at 1582. The successor statute contravenes this fundamental premise by compelling a new employer to honor, against its will, the terms of a collective bargaining agreement negotiated by its predecessor.

Plaintiffs assert that the successor statute involves no compulsion. Rather, they contend a new employer becomes bound by an existing agreement as a result of the employer's decision to purchase a business with employees that have a collective bargaining agreement containing a successor clause. This argument fails to recognize the coercive impact of the statute. Minnesota's successor statute forces a new employer to be bound by a collective bargaining agreement that it did not bargain for. The fact that a new employer is cognizant of an existing collective bargaining agreement is not tantamount to a conscious decision to assume the obligations of the agreement. St. Cloud was aware of the collective bargaining agreement but expressly refused to assume any obligation under the agreement. Minnesota's successor statute attempts to vitiate that clearly expressed intent by imposing the collective bargaining agreement on St. Cloud against its will.

The argument advanced by plaintiffs also ignores an important policy underlying federal labor law. In crafting the successorship doctrine the Supreme Court has been careful to ensure that the free transfer of capital

---

5. Subdivision 3 of Minn.Stat. § 338.02 states:
 An employer who is party to a collective bargaining agreement containing a clause regulating the rights and obligations of a new employer has the affirmative duty to disclose the existence of the agreement and clause to a new employer. The disclosure requirement is satisfied by including in any contract of sale, agreement to purchase, or any similar instrument of conveyance, a statement that the new employer is bound by that clause as provided for in the collective bargaining agreement. Failure of an employer to disclose the existence of a collective bargaining agreement containing that clause does not affect the enforceability of the collective bargaining agreement against a new employer.

6. Minn.Stat. § 338.01 provides:
 The legislature finds that a basic tenet of contract law is mutually enforceable promises. The legislature further finds that contracts respecting employment are important and desirable. The legislature's purpose in enacting §§ 338.02 and 338.03 is to assist in ensuring that the mutual promises in employment contracts are honored and enforced.

remains unimpaired. *See, e.g., Burns,* 406 U.S. at 287–88, 92 S.Ct. at 1582–83. In *Burns,* the Court recognized that potential employers might be unwilling to buy ailing businesses if they could not make changes in the labor force and work conditions. *Id.* The Court stated that "[s]addling [a new] employer with the terms and conditions of employment contained in the old collective-bargaining contract may make [such] changes impossible and may discourage and inhibit the transfer of capital." *Id.* at 288, 92 S.Ct. at 1582. By binding new employers to collective bargaining agreements against their will, Minnesota's successor statute impermissibly undermines federal labor law policy designed to ensure the free transfer of capital.

Plaintiffs also contend that *Garmon* preemption does not apply because employers do not have a protected right to dishonor or void collective bargaining agreements. That broad statement, although generally accurate, misses the mark here. A new employer who is not a party to a collective bargaining agreement cannot be said to dishonor its terms. Moreover, federal labor law guarantees both employers and employees the right to be free from having contract terms or agreements imposed upon them against their will. The right to be free from governmental compulsion is protected by section 8(d) of the NLRA. Minnesota's successor statute violates this right and, accordingly, is preempted under *Garmon.*

■ The union argues that Minnesota's successor statute falls into the "local interest" exception. The union contends that the areas of stability in employment and enforceability of contracts are so deeply rooted in local feeling and responsibility that Congress could not have intended to preempt the application of state law in these areas. These concerns, while undoubtedly legitimate, are too generalized to permit the State of Minnesota to redefine federal labor law. In *Burns,* the Supreme Court found concerns similar to those expressed by the State of Minnesota subordinate to the bargaining freedom of employers and unions established by Congress.

The exception invoked by the union is generally limited to matters of criminal and tortious activity.[7] The "[p]olicing of actual or threatened violence to persons or destruction of property has been held most clearly a matter for the States." *Machinists,* 427 U.S. at 136, 96 S.Ct. at 2551. Minnesota's successor statute does not codify a common law tort. The statute does not regulate public safety; it has no relation to policing the violence sometimes associated with labor disputes.[8] Instead, it forces an employer to accept the terms of a labor agreement which it did not bargain for. The court concludes that the exceptions to the *Garmon* rule do not save the successor statute from preemption.

■ The Court also finds that Minnesota's successor statute is preempted under the *Machinists* doctrine. The Supreme Court has been careful to safeguard the rightful prerogative of owners independently to rearrange their businesses. The Supreme Court has also emphasized that "[a] potential employer may be willing to take over a moribund business only if he can make changes in corporate structure, composition of the labor force, . . . and nature of supervision." *Howard Johnson,* 417 U.S. at 261, 94 S.Ct. at 2243 (quoting *Burns,* 406 U.S. at 287–88, 92 S.Ct. at 1582–83).

It is a basic principle of federal labor law that a new employer has the right to not hire any of the employees of its predecessor. *Howard Johnson,* 417 U.S. at 262, 94 S.Ct. at

---

7. *See Farmer v. United Bhd. of Carpenters and Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (NLRA does not preempt state law intentional infliction of emotional distress action); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (state law trespass action not preempted); *Belknap, Inc. v. Hale,* 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (NLRA does not preempt misrepresentation and breach of contract action by scab against employer).

8. Ironically the successor statute may actually promote industrial discord. *See Burns,* 406 U.S. at 288, 92 S.Ct. at 1582–83 ("Strife is bound to occur if the concessions that must be honored do not correspond to the relative economic strength of the parties.").

2243; *Burns,* 406 U.S. at 280 n. 5, 92 S.Ct. at 1578 n. 5 (employer who purchases the assets of a business has no obligation to hire the employees of the predecessor).[9] Minnesota's successor statute prohibits the employer's exercise of this well-established right. Under the statute the predecessor's employees are deemed the employees of a new employer who "conducts or will conduct substantially the same business operation . . . and use the same physical facilities" as the predecessor. Minn.Stat. § 138.02, subd. 2.[10] Because the statute "forbids actions which federal labor law clearly permit," it is contrary to federal labor law and is preempted. *Employers Ass'n, Inc. v. United Steelworkers of America,* 803 F.Supp. 1558, 1565 (D.Minn.1992).

It is also well-established federal labor law that a successor employer is not bound by a predecessor's collective bargaining agreement unless it assumes the agreement. *Howard Johnson,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). Moreover, the mere presence of a successor clause in the collective bargaining agreement does not bind the successor to the substantive terms of the agreement. *Id.* at 258 n. 3, 94 S.Ct. at 2241 n. 3. By forcing a new employer to honor a collective bargaining agreement that it neither bargained for nor assumed, Minnesota's successor statute "add[s] to an employer's federal legal obligations in collective bargaining." *Machinists,* 427 U.S. at 147, 96 S.Ct. at 2557 (quotation omitted).

Minnesota's successor statute also adds to an employer's federal legal obligations by requiring an employer to include in the instrument of conveyance a statement that the purchaser is bound by the successor clause. In other words, the employer must make the purchaser agree to assume the collective bargaining agreement as a condition of any sale. The agreement between USWA and St. Gabriel's contains general successorship language. The successor clause does not, however, expressly require St. Gabriel's to compel assumption of the collective bargaining agreement by a purchaser as a condition of sale. According to the weight of authority, such specific language is necessary to impose such a duty on the employer. *Wyatt Mfg. Co.,* 82 Lab.Arb. 153, 162 (BNA) (1983) (Goodman, Arb.); *accord Central States, Southeast and Southwest Areas Pension Fund v. PYA/Monarch of Texas, Inc.,* 851 F.2d 780, 782–83 (5th Cir.1988). Minnesota's successor statute, however, obligates an employer to condition a sale on a purchaser's assumption of the collective bargaining agreement even where the language of the successor clause contains no such requirement.

The court recognizes that in enacting the successor statute the State of Minnesota was motivated by good intentions to protect job security and the expectations of its organized workers. The means by which the State has attempted to achieve this purpose, however, runs afoul of federal labor laws. Freedom of collective bargaining is a fundamental premise of the federal labor laws. Minnesota's successor statute intrudes upon the collective bargaining process that Congress deemed essential to the NLRA.

Plaintiffs contend that *Machinists* preemption does not apply because the statute neither restricts the exercise of the employers' economic weapons nor alters the balance of power between the employers and employees. The court disagrees and concludes that the State of Minnesota has entered "into the substantive aspects of the bargaining process to an extent Congress has not countenanced." *Machinists,* 427 U.S. at 149, 96 S.Ct. at 2557 (quoting *Insurance Agents,* 361 U.S. at 498, 80 S.Ct. at 432). The statute gives employees much greater protection than they are able to achieve through the

---

**9.** *See Howard Johnson,* 417 U.S. at 264, 94 S.Ct. at 2244 ("employees of the terminating employer have no legal right to continued employment with the new employer.").

**10.** The Supreme Court has recognized this problematic aspect of imposing a collective bargaining agreement on an unconsenting successor. *See Burns,* 406 U.S. at 288, 92 S.Ct. at 1582–83 ("It would seemingly follow that employees of the predecessor would be deemed employees of the successor, dischargeable only in accordance with provisions of the contract and subject to the grievance and arbitration provisions thereof. [The successor] would not [be] free to replace [the predecessor's employees] with its own except as the contract permitted.") (footnote omitted).

**344**

collective bargaining process. The statute requires employers to make concessions, not as part of the collective bargaining process, but based on an artificial bargaining balance imposed by the state. A new employer and the union have to determine their own bargaining equilibrium. Under the broad preemptive power of the NLRA, the State has no authority to introduce its own standard of "properly balanced bargaining power." Defendants also argue that Minn.Stat. § 338.01 necessarily requires interpretation and application of collective bargaining agreements and, therefore, is preempted under § 301 of the Labor Management Relations Act. Plaintiffs respond that application of Minnesota's successor statute does not call for interpretation of collective bargaining agreements but involves merely the continuation of agreements that contain successor clauses. Having concluded that the statute is preempted under *Garmon* and *Machinists* preemption, the court need not decide whether § 301 preemption also applies.[11]

## CONCLUSION

Minnesota's successor statute requires an unconsenting new employer to honor the obligations of a predecessor's collective bargaining agreement. The court holds that Minn.Stat. § 338.01, *et seq.*, is preempted under federal labor law insofar as it applies to employers who are subject to the NLRA. Accordingly, the court holds that Minnesota's successor statute as it applies to employers who are subject to the NLRA is unconstitutional under the Supremacy Clause. Having concluded that the statute relied on by the union is unconstitutional, the court need not address the merits of the union's request for preliminary injunctive relief.

Based on the foregoing, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment is granted. **IT IS FURTHER ORDERED** that the motion of United Steelworkers of America, AFL–CIO–CLC, for preliminary injunctive relief is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**11.** The issue presented here was limited to St. Cloud's duty to assume the agreement between St. Gabriel's and the union. The extent, if any, of St. Cloud's duty to recognize and bargain with the USWA was not raised by the parties or addressed by the court.