**COMMONWEALTH EDISON COMPANY, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 15, Defendant.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL UNION NO. 15, Plaintiff,**

v.

**COMMONWEALTH EDISON COM-PANY, and Kincaid Generation, L.L.C., Defendants.**

Nos. 96 C 3989, 96 C 7295.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 21, 1997.

Charles A. Werner, James I. Singer, Schuchat, Cook and Werner, St. Louis, MO, James Lockwood, Park Ridge, IL, Ralph H. Loewenstein, Deffenbaugh, Loewenstein, Hagen, Oehlert & Smith, Springfield, IL, for Local 15 Intern. Broth. of Elec. Workers.

Kenneth T. Lopatka, Craig T. Boggs, Matkov, Salzman, Madoff & Gunn, Chicago, IL, Thomas Schanzle–Haskins, Giffing, Winning, Cohen & Bodewes, Springfield, IL, W. Carter Younger, Gary S. Marshall, Pamela L. Ventura, McGuire, Woods, Battle & Boothe, Richmond, VA, for Kincaid Generation LLC.

Brian Jeffrey Gold, Leah Ellen Pazol, Sonja L. Lengnick, Sidley & Austin, Chicago, IL, for Commonwealth Edison.

Robert Shorey Graettinger, Illinois Atty. General's Office, Chicago, IL, Deborah Lynn Barnes, Asst. Atty. Gen., Springfield, IL, for Illinois Commerce Commission.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

Plaintiff International Brotherhood of Electrical Workers, Local Union No. 15 ("Local 15") filed suit (Case No. 96 C 7295) against Commonwealth Edison Company ("ComEd"), Kincaid Generation, L.L.C. ("Kincaid"), and the Illinois Commerce Commission ("ICC") alleging that the Asset Sale Agreement negotiated between ComEd and Kincaid for the sale of the Kincaid Generating Station (the "Generating Station") in Sangamon and Christian Counties, Illinois, is in direct violation of the Illinois Collective Bargaining Successor Employer Act, 820 ILCS 10/1 (the "Illinois successor statute"). ComEd and Kincaid have filed separate motions for judgment on the pleadings pursuant to Fed. R.Civ. P. 12(c) arguing that the Illinois successor statute is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*

ComEd has also filed suit (Case No. 96 C 3989) against Local 15 seeking, among other things, a declaration that ComEd has not violated the Illinois successor statute because it is completely preempted by § 301 of the LMRA, 29 U.S.C. § 185, and by the NLRA, 29 U.S.C. § 151 *et seq.* ComEd has filed a motion for a judgment on the pleadings [1] in this case as well.

For the following reasons, ComEd's and Kincaid's motions for summary judgment in Case No. 96 C 7295 are granted. ComEd's motion for summary judgment in Case No. 96 C 3989 is also granted.

### BACKGROUND

The undisputed facts are as follows. Defendant ComEd is a public utility company that provides electrical power to customers in the State of Illinois. Plaintiff Local 15 is the exclusive bargaining representative of ComEd's bargaining unit employees, including all of the bargaining unit employees at

---

1. Because matters outside the pleadings were presented to and not excluded by the Court, all three motions for judgment on the pleadings shall be treated as motions for summary judgment in accordance with Rules 12(c) and 56(c). The parties have been given a reasonable opportunity to present all material made pertinent to such motions by Rule 56.

ComEd's Generating Station in Sangamon and Christian Counties, Illinois.

Local 15 and ComEd are parties to a collective bargaining agreement that governs the terms and conditions of employment for ComEd's bargaining unit employees, including all employees at the Generating Station. The collective bargaining agreement provides in part:

> This agreement shall be binding upon the parties and their respective successors and assigns. Subject to the Company obtaining all necessary approval of any governmental authority or regulatory body, including but not limited to the Illinois Commerce Commission, and except in cases of liquidation or condemnation or sale or transfer (i) to any entity which has the authority to initiate condemnation proceedings, or (ii) pursuant to any right granted prior to the date hereof, in the event the Company sells or otherwise transfers all or substantially all of its assets to another person, company, corporation, or firm during the term of this Agreement, the Company will require such purchaser or transferee to assume the obligations under this Agreement until the expiration of the term of this Agreement.

(Compl. ¶ 5; Answer ¶ 5). The agreement expires on September 30, 1997.

Defendant Kincaid is a Virginia limited liability company which operates public utility companies. On March 29, 1996, Kincaid entered into an Asset Sale Agreement (the "Sale Agreement") with ComEd for the purchase of ComEd's Generating Station in Sangamon and Christian Counties, Illinois. The Sale Agreement provides in part:

> Buyer shall not be subject to the provisions of any collective bargaining agreement between Seller and its employees as a result of the transactions contemplated by this Agreement and Buyer's employment of some or all of the employees of Seller employed at the Plant.

(Asset Sale Agreement ¶ 8.10; Compl. ¶¶ 12–13; Answer ¶¶ 12–13). The Sale Agreement also permits Kincaid to establish its own employment level at the generating Station and the terms and conditions for such employment, but requires Kincaid to offer positions to ComEd's bargaining unit employees who apply for non-supervisory positions up to the employment level established by Kincaid. (Asset Sale Agreement ¶ 6.12). If a majority of the non-supervisory employees hired by Kincaid were formerly employed by ComEd in the bargaining unit represented by Local 15, Kincaid will recognize Local 15 as the exclusive bargaining representative of employees holding non-supervisory positions at the Generating Station. (Asset Sale Agreement ¶ 6.12).

The sale of the Generating Station is subject to approval by the defendant ICC. On May 13, 1996, ComEd filed a petition with the ICC pursuant to § 7–102 of the Illinois Public Utilities Act, 220 ILCS 5/7–102, requesting approval of the Sale Agreement. Local 15 opposes the sale and, consequently, moved to intervene in the proceedings. The ICC granted Local 15's motion to intervene on September 25, 1996. Oral argument on the pending petition was conducted on January 21, 1997. The ICC has not yet issued a decision.

Local 15 objects to the sale of the Generating Station because the Sale Agreement does not require Kincaid to assume ComEd's obligations under the ' collective bargaining agreement negotiated with Local 15. According to Local 15, this constitutes a violation of the Illinois successor statute, 820 ILCS 10/1, which makes a new employer liable for the obligations of a predecessor's collective bargaining agreement when the agreement contains a "successor clause." The statute provides in part:

> Where a collective bargaining agreement between an employer and a labor organization contains a successor clause, such clause shall be binding upon and enforceable against any successor employer who succeeds to the contracting employer's business, until the expiration date of the agreement therein stated. No such successor clause shall be binding upon or enforceable against any successor employer for more than 3 years from the effective date of the collective bargaining agreement between the contracting employer and the labor organization.

820 ILCS 10/1(a). A "successor employer" is defined as "any purchaser, assignee, or transferee of a business the employees of which are subject to a collective bargaining agreement, if such purchaser, assignee, or transferee conducts or will conduct substantially the same business operation, or offer the same service, and use the same physical facilities, as the contracting employer." 820 ILCS 10/1(b). The Illinois successor statute further provides: .

> An employer who is a party to a collective bargaining agreement containing a successor clause has the affirmative duty to disclose the existence of such agreement and such clause to any successor employer. Such disclosure requirement shall be satisfied by including in any contract of sale, agreement to purchase, or any similar instrument of conveyance, a statement that the successor employer is bound by such successor clause as provided for in the collective bargaining agreement. Failure of an employer to disclose the existence of a collective bargaining agreement containing a successor clause as required by subsection (d) shall not effect the enforceability of such collective bargaining agreement against a successor employer.

820 ILCS 10/1(d). Additionally, the statute imposes a fine not to exceed $5,000 on an employer that fails to comply with its provisions. 820 ILCS 10/2.

On July 1, 1996, ComEd filed suit against Local 15 in the United States District Court for the Northern District of Illinois, Eastern Division (Case No. 96 C 3989) seeking, among other things, a declaration that ComEd has not violated the Illinois successor statute because it is completely preempted by § 301 of the LMRA, 29 U.S.C. § 185, and by the NLRA, 29 U.S.C. § 151 et seq. Jurisdiction over this action is premised on 28 U.S.C. § 1331 and 29 U.S.C. § 185.

On July 18, 1996, Local 15 filed suit (Case No. 96 C 7295) against ComEd, Kincaid, and the ICC in the Circuit Court of Sangamon County, Illinois, alleging that the Sale Agreement between ComEd and Kincaid for the sale of the Generating Station is in direct violation of the Illinois successor statute because the Sale Agreement expressly provides that Kincaid is not required to assume ComEd's obligations under the collective bargaining agreement negotiated with Local 15. (Compl.¶ 17–18). Local 15 seeks an order compelling ComEd to incorporate in the Sale Agreement the terms of the current collective bargaining agreement between ComEd and Local 15 and an order that those terms and conditions are binding on Kincaid. (Compl.¶ 19). Local 15 further requests that "the Court enjoin the ICC, ComEd, and Kincaid, from the continued processing of a Petition before the ICC containing an Asset Sale Agreement with provisions that are in direct violation of an Illinois statute; that the Court enjoin the ICC from issuing an Order consenting to and/or approving a Petition for the sale of certain utility property, including the Kincaid Generating Station, by ComEd to Kincaid when the Petition contains an Asset Sale Agreement which is in direct violation of an Illinois statute." (Compl.¶ 25).

On August 9, 1996, ComEd and Kincaid filed a timely notice of removal, see 28 U.S.C. § 1446(b), pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185 asserting that the Illinois successor statute is completely preempted by § 301 of the LMRA. Consequently, the case was removed to the United States District Court for the Central District of Illinois. The ICC did not join in the petition for removal. ComEd and Kincaid asserted that the ICC's consent to removal was not necessary since it was fraudulently joined as a party to this suit. On September 6, 1996, Local 15 filed a timely motion to remand the case to the Circuit Court of Sangamon County, Illinois, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447.

Judge Richard Mills of the United States District Court for the Central District of Illinois addressed Local 15's motion to remand on October 30, 1996. He concluded:

> Because all three preemption doctrines have been raised in the Northern District case and only one has been raised here, it makes sense to consolidate these cases. It would be a waste of judicial resources to have two cases pending when the parties and the issues are nearly identical and the results of one case would be res judicata on the other. See *Kearney & Trecker*

*Corp. v. Cincinnati Milling Mach. Co.*, 254 F.Supp. 130, 133 (N.D.Ill.1966). Furthermore, it would conserve judicial resources to have all preemption issues relating to the same statute decided in one forum.

*International Brotherhood of Electrical Workers, AFL–CIO, Local Union 15 v. Commonwealth Edison Company, Kincaid Generation L.L.C., and Illinois Commerce Commission*, No. 96–3228, slip op. at 5–6 (C.D.Ill. Oct. 30, 1996). In the interest of justice, Judge Mills transferred the case to this Court pursuant to 28 U.S.C. § 1404(a). *Id.* at 6.[2] Judge Mills also denied all pending motions as moot and granted the parties leave to refile them before this Court. *Id.*

On or about November 5, 1996, Local 15 filed a renewed motion to remand the case (No. 96 C 7295) to the Circuit Court of Sangamon County, Illinois, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447. On December 31, 1996, we denied the motion to remand holding that this case arises under § 301 of the LMRA and, therefore, pursuant to the complete preemption exception to the well-pleaded complaint rule, this Court is vested with subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). Se *Commonwealth Edison Company v. International Brotherhood of Electrical Workers, Local Union No. 15*, 961 F.Supp. 1154, 1164 (N.D.Ill.1996). We also dismissed the ICC as a party to this suit under the doctrine of fraudulent joinder thereby leaving ComEd and Kincaid as the only remaining defendants. *Id.* at 1168.

ComEd and Kincaid have filed motions for judgment on the pleadings—which we will treat as motions for summary judgment—in

Case No. 96 C 7295 contending that the Illinois successor statute is preempted by federal labor law, i.e., the LMRA and NLRA.[3] ComEd has filed a similar motion—which we will also treat as a motion for summary judgment—in its declaratory judgment action (Case No. 96 C 3989). Local 15 responds that the motions must be denied because: (1) this case is only of peripheral concern to the LMRA and touches interests in state law and local feeling and responsibility; (2) this case does not involve interpretation of the collective bargaining agreement but only application of its terms and conditions; (3) there are disputed material facts; and (4) this dispute is not a "real case" ripe for decision.[4]

## DISCUSSION

The issues in Local 15's case (No. 96 C 7295) against ComEd and Kincaid are identical to those in ComEd's declaratory judgment action (No. 96 C 3989): whether the Illinois successor statute is preempted by federal labor law, i.e., the LMRA and NLRA. The following discussion on federal preemption is therefore directed to both cases.

■ The Supremacy Clause of the United States Constitution provides that "the Laws of the United States which shall be made in Pursuance [of the Constitution] ... shall be the supreme law of the land." U.S. Const. art. VI, cl. 2.[5] This provision invalidates all laws that conflict or interfere with an Act of Congress. *Rose v. Arkansas State Police*, 479 U.S. 1, 3, 107 S.Ct. 334, 334–35, 93 L.Ed.2d 183 (1986). It also gives Congress the power to preempt state law. *NLRB v. State of Ill. Dept. of Employment Sec.*, 988 F.2d 735, 738 (7th Cir.1993).

2. Local 15's action (Case No. 96 C 7295) was originally assigned to our colleague Judge Harry D. Leinenweber. On December 20, 1996, the case was reassigned to this Court and consolidated with ComEd's declaratory judgment action (Case No. 96 C 3989) on the basis of relatedness pursuant to Local General Rule 2.31.

3. Oral argument on these motions was conducted on January 22, 1997.

4. Interestingly, Local 15 does not address ComEd's and Kincaid's claims that the Illinois successor statute is preempted by the NLRA.

5. In its entirety, the Supremacy Clause provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. art. VI, cl. 2.

■ Congressional power to legislate in the area of labor relations is well-established. *Evans v. Einhorn,* 855 F.2d 1245, 1249 (7th Cir.1988)(citing *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937)). Two federal statutes provide the major sources of federal preemption in this area: § 301 of the LMRA, 29 U.S.C. § 185(a), and § 8 and § 9(a) of the NLRA, 29 U.S.C. § 158 and § 159(a). Because Congress has never exercised its authority to occupy the entire field of labor relations, the question whether a certain state statute is preempted by federal labor law is one of congressional intent. *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 248–54, 114 S.Ct. 2239, 2242–44, 129 L.Ed.2d 203 (1994); *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1189–90, 55 L.Ed.2d 443 (1978).

■ Congress did not explicitly state to what extent it intended § 301 of the LMRA and § 8 and § 9(a) of the NLRA to preempt state law. In such instances, the court must begin with the basic assumption that Congress did not intend to displace state law. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981). Thus, courts should sustain a state law unless it "conflicts with federal law or would frustrate the federal scheme, or unless [the court] discern[s] from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the states." *Building and Const. Trades Council of Metropolitan Dist. v. Associated Builders and Contractors of Massachusetts/Rhode Island Inc.,* 507 U.S. 218, 224, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565 (1993)(*quoting Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747–48, 105 S.Ct. 2380, 2393–94, 85 L.Ed.2d 728 (1985)).

Here, ComEd contends that the Illinois successor statute is preempted by § 301 of the LMRA and by § 8 and § 9(a) of the NLRA. Kincaid relies strictly on NLRA preemption because it is not a party to the collective bargaining agreement negotiated with Local 15. The principal questions are therefore whether the Illinois successor statute conflicts or interferes with federal labor regulations such that the LMRA and the NLRA preempt its authority, or whether it is clear under the totality of the circumstances that Congress intended the present issues involving the collective bargaining process to be entirely occupied by federal regulations to the exclusion of the states. We address each federal statute in turn.

### I. *§ 301 of the LMRA*

Congress exercised its power under the Supremacy Clause to preempt state law by enacting § 301(a) of the LMRA which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "This section provides federal court jurisdiction over controversies involving collective bargaining agreements and also authorizes federal courts to fashion a body of federal law for the enforcement of those agreements." *Loewen Group Intern., Inc. v. Haberichter,* 65 F.3d 1417, 1421 (7th Cir.1995); *see also Textile Workers Union of America v. Lincoln Mills of Ala.,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Federal law must be applied when resolving such disputes to ensure uniform interpretation of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 1879–80, 100 L.Ed.2d 410 (1988); *Loewen,* 65 F.3d at 1421.

In order to determine whether a party's state law claims are preempted under § 301, courts must decide whether the resolution of the state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement. *Lingle,* 486 U.S. at 405–06, 407, 409–10, 108 S.Ct. at 1881–82, 1882, 1883–84. Section 301 preempts claims "founded directly on rights created by collective bargaining agreements, and also on claims substantially dependent on analysis of a collective bargaining agreement." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987)(quot-

ing *International Broth. of Elec. Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987)); *Loewen,* 65 F.3d at 1421. If the "heart of the [state law] complaint [is] a . . . clause in the collective bargaining agreement, that complaint arises under federal law." *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2430 (*quoting Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers,* 390 U.S. 557, 558, 88 S.Ct. 1235, 1236, 20 L.Ed.2d 126 (1968)).

The broad preemptive effect of § 301 does not, however, apply in every case involving a collective bargaining agreement. *Loewen,* 65 F.3d at 1421. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985); *Loewen,* 65 F.3d at 1421. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994). Rather, preemption is found only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent on an analysis of the terms of the collective bargaining agreement. *Loewen,* 65 F.3d at 1423; *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2430–31; *Lueck,* 471 U.S. at 210, 105 S.Ct. at 1910–11.

In our previous opinion denying Local 15's motion to remand, we already determined that § 301 of the LMRA completely preempts Local 15's claims under the Illinois successor statute. "[B]ecause a provision of the collective bargaining agreement is the subject of this dispute, and because there are no rights or obligations imposed on ComEd or Kincaid independent of the terms of the collective bargaining agreement," this cause of action is completely preempted by § 301 of the LMRA. *Commonwealth Edison,* at 1160–1164.[6] The same analysis applies here.

Local 15's complaint alleges a direct violation of the Illinois successor statute which makes a new employer liable for the obligations of a predecessor's collective bargaining agreement when that agreement contains a successor clause. (Compl.¶¶ 17, 23). The statute provides in part:

> Where a collective bargaining agreement between an employer and a labor organization contains a successor clause, such clause shall be binding upon and enforceable against any successor employer who succeeds to the contracting employer's business, until the expiration date of the agreement therein stated. No such successor clause shall be binding upon or enforceable against any successor employer for more than 3 years from the effective date of the collective bargaining agreement between the contracting employer and the labor organization.

820 ILCS 10/1(a). A "successor employer" is defined as "any purchaser, assignee, or transferee of a business the employees of which are subject to a collective bargaining agreement, if such purchaser, assignee, or transferee conducts or will conduct substantially the same business operation, or offer the same service, and use the same physical facilities, as the contracting employer." 820 ILCS 10/1(b). The statute also imposes a fine not to exceed $5,000 on an employer that fails to comply with its provisions. 820 ILCS 10/2.

Even the most cursory reading of the Illinois successor statute, on which Local 15's complaint is based, reveals that the "heart of the [state law] complaint [is] a . . . clause in the collective bargaining agreement." Specifically, the collective bargaining agreement at issue in this case contains the following provision which Local 15 refers to as a "successor clause":

> This agreement shall be binding upon the parties and their respective successors and assigns. Subject to the Company obtaining all necessary approval of any governmental authority or regulatory body,

---

6. For purposes of the present motions, we as-

sume familiarity with our previous opinion.

including but not limited to the Illinois Commerce Commission, and except in cases of liquidation or condemnation or sale or transfer (i) to an entity which has the authority to initiate condemnation proceedings, or (i) pursuant to any right granted prior to the date hereof, in the event the Company sells or otherwise transfers all or substantially all of its assets to another person, company, corporation, or firm during the term of this Agreement, the Company will require such purchaser or transferee to assume the obligations under this Agreement until the expiration of the term of this Agreement.

(Compl. ¶ 5; Answer ¶ 5). The meaning, application, and enforcement of this provision, and not the Illinois successor statute, is the subject of this dispute. Indeed, the statute presupposes the existence of a "successor clause" in the collective bargaining agreement. It creates no rights independent of the collective bargaining agreement itself. Resolution of this dispute will therefore require a court initially to interpret the collective bargaining agreement to determine whether it contains a "successor clause" as defined by the statute.

In *Lueck*, a worker sued his employer and the insurance company that administered the provisions of the collective bargaining agreement relating to disability benefits. The worker alleged that the defendants had refused in bad faith to honor his claim for benefits. Although the Supreme Court upheld preemption of the bad faith tort by § 301 of the LMRA, it emphasized that not every state law asserting a right that relates to a collective bargaining agreement is preempted. 471 U.S. at 211, 105 S.Ct. at 1911. Rather, only "state law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements." *Id.* at 213, 105 S.Ct. at 1912. Thus, any claim that "is inextricably intertwined with consideration of the terms of a labor contract" is preempted. *Id.*

This rule was applied by Judge Susan Getzendanner in *SR Industries Corp. v. Interna-*

*tional Ass'n of Bridge, Structural and Ornamental Ironworkers, Shopmen's Div., Local No. 473*, No. 87 C 2370, 1987 WL 17818 (N.D.Ill. Sept.25, 1987). In that case, the plaintiff corporation and defendant union negotiated a collective bargaining agreement which provided for, among other things, annual vacation benefits in accordance with a schedule based on length of employment. After the agreement expired, the company discharged the majority of its employees. In response, the union requested the payment of vacation benefits which had accrued but had not been received during the tenure of the agreement. After the company refused to pay any vacation benefits and denied there was any obligation to do so, the union filed suit in the Circuit Court of Cook County, Illinois, alleging violations of the Illinois Wage Payment and Collection Act ("IWCPA"). The IWCPA provided that, unless otherwise provided for in a collective bargaining agreement, whenever an employment contract or policy provides for paid vacations, and an employee resigns without having taken all vacation time earned, the monetary equivalent shall be paid to him or her.

The company subsequently filed its own action in federal court seeking a declaration that the IWCPA was preempted by § 301 of the LMRA. Judge Getzendanner concluded that preemption was appropriate since the right to vacation pay, if it still existed and was not divested by termination of the contract, must be derived from the collective bargaining agreement and not the IWCPA. *Id.* at *2. She also rejected any arguments that the case involved only interpretation of the IWCPA:

It is not correct to argue that this case depends only on an interpretation of the IWCPA, and so therefore preemption is unnecessary. The IWCPA presupposes the existence of an employment contract which creates the entitlement to vacation pay. It does not of its own force, create vacation pay entitlements. (citation omitted). Thus, rather than deriving from the IWCPA, if it exists at all, depends upon the contract and its interpretation. Accordingly, as in McNeil, § 301 preempts the Union's IWCPA claim.

*Id.; see also National Metalcrafters, Div. of Keystone Consol. Industries v. McNeil,* 784 F.2d 817, 824 (7th Cir.1986)(holding that § 301 preempted IWCPA because state law claim was simply whether employer had breached its agreement to pay vacation benefits; because there was no state law right to vacation benefits independent of labor contract, deciding whether the employer complied with its contractual obligations necessarily required an interpretation of the collective bargaining agreement).

■ Local 15's claim—or any claim brought pursuant to the Illinois successor statute for that matter—provides a much stronger case for preemption than *SR Industries* or *McNeil.* The Illinois successor statute does not, of its own force, impose successorship status on the prospective buyer. Rather, successorship exists, if at all, only when the collective bargaining agreement contains a "successor clause." Thus, enforcement of the statute depends upon whether the parties have negotiated a collective bargaining agreement that contains a "successor clause." The right or obligation to impose successorship, as Local 15 concedes, is negotiable; it is created by, and subject to, the terms of the collective bargaining agreement. *See, e.g., Livadas,* 512 U.S. at 122–24, 114 S.Ct. at 2078 (Although § 301 is not interpreted so broadly as "to preempt nonnegotiable rights conferred on individual employees as a matter of state law ... it is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement ... that decides whether a state cause of action may go forward."). This obligation, which is not controlled or derived from the statute, can therefore be waived or altered by the parties. When "state-law rights and obligations ... do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." *Lueck,* 471 U.S. at 213, 105 S.Ct. at 1912.

In sum, the heart of the present complaint is a violation of the alleged "successor clause" in the collective bargaining agreement which Local 15 seeks to enforce. "[T]he Supreme Court treats any attempt to interpret, en-

force or question a collective bargaining agreement as necessarily based on national law—in this case, [§ 301 of the LMRA.]" *Matter of Amoco Petroleum Additives Co.,* 964 F.2d 706, 709 (7th Cir.1992). The only thing the Illinois statute at issue in this case requires is that the employer honor the collective bargaining agreement. To decide whether he has done so necessarily requires interpreting that agreement. Such a claim falls squarely within the category of cases in which "the pre-emption rule has been applied to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" *Livadas,* 512 U.S. at 122–23, 114 S.Ct. at 2078 (quoting *Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911).

Because the Illinois successor statute presupposes the existence of a "successor clause" in the collective bargaining agreement, adjudication of any claim brought pursuant to the statute will necessarily require interpretation of that agreement. The Illinois successor statute is therefore preempted by § 301 of the LMRA. *See Commonwealth Edison,* at 1160–1164.

We find Local 15's arguments to the contrary unpersuasive. During oral argument, counsel for Local 15 argued that this case, and the Illinois successor statute, do not implicate § 301 of the LMRA because the sale of the Generating Station involves only state matters. For instance, this case involves ICC approval of the sale of an Illinois generating station by an Illinois public utility to a purchaser authorized to do business in Illinois. Counsel further argued that Local 15's claims do not implicate the terms of the collective bargaining agreement.

In the same breath, however, counsel asserted that ComEd should have filed a grievance under the LMRA before filing its declaratory judgment action. These two contentions are entirely inconsistent; either the LMRA governs this dispute or it does not. We believe that it does. It seems a stretch to say that ComEd's dispute arises

under the LMRA but Local 15's does not when the issues, and indeed the dispute, are the same, i.e., the application and validity of the Illinois successor statute.

Local 15 further argues that there are disputed facts which preclude summary judgement here. Again, we disagree as Local 15 fails to identify any of these disputed material facts. In any event, we find that the material facts necessary for the resolution of this dispute are uncontested, particularly the terms of the collective bargaining agreement and the Sale Agreement. Further, there is no dispute over the substantive requirements of the Illinois successor statute.

Finally, Local 15 argues that this dispute may not be a "real case" ripe for the Court's review because the sale of the Generating Station may never be consummated. Specifically, the ICC might withhold its approval of the Sale Agreement or one of parties might unilaterally pull out of the sale. There is no question that these contingencies, should they occur, may very well moot the present issues altogether. Nonetheless, we reject this argument for the simple reason that Local 15 filed the present action for declaratory and injunctive relief alleging that "[i]rreparable damage will be done to the employees represented by [Local 15] at the [Generating Station] if the ICC consents to and/or approves ComEd's Petition of the Asset Sale Agreement." (Compl.¶ 25). For purposes of the present motions, we assume that Local 15 would not have filed the instant action were this controversy not ripe for review.[7]

For the reasons stated here, and in our previous memorandum opinion, we find that the Illinois successor statute is preempted by § 301 of the LMRA insofar as it applies to employers who are subject to the LMRA. *See Commonwealth Edison*, at 1160–1164.

## II. *NLRA*

■ The NLRA is undoubtedly an act of Congress made "in pursuance" of the Constitution. It is therefore the supreme law of the land and any state statute which the NLRA preempts necessarily violates the Constitution. *Cannon v. Edgar*, 33 F.3d 880, 883 (7th Cir.1994). In determining whether the Illinois successor statute is pre-empted by the NLRA and therefore invalid under the Supremacy clause of the Constitution, "our sole task is to ascertain the intent of Congress." *California Federal Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987).

The NLRA "is a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce." *Nash v. Florida Indus. Commission*, 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438 (1967). It safeguards the right of employees to self-organization and to select representatives for collective bargaining. 29 U.S.C. § 157; *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33, 57 S.Ct. 615, 622, 81 L.Ed. 893 (1937). The NLRA reflects congressional intent to create a uniform, national body of labor law interpreted and administered by a centralized agency, the National Labor Relations Board. *New York Telephone Co. v. New York State Dept. of Labor*, 440 U.S. 519, 528, 99 S.Ct. 1328, 1334–35, 59 L.Ed.2d 553 (1979).

"[I]n passing the NLRA Congress largely displaced state regulation of industrial relations." *Wisconsin Dept. of Industry, Labor and Human Relations v. Gould, Inc.*, 475 U.S. 282, 286, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223 (1986). The act vests the NLRB with primary jurisdiction over unfair labor practices. *See* 29 U.S.C. § 158; *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108, 110 S.Ct. 444, 449–50, 107 L.Ed.2d 420 (1989)[hereinafter *Golden State II*.] Thus, the NLRA "forecloses overlapping state enforcement of the prohibitions in Section 8 of the Act." *New York Telephone*, 440 U.S. at 528, 99 S.Ct. at 1334.

The Supreme Court has articulated two distinct preemption doctrines under the NLRA. The first, "*Garmon* preemption," forbids state and local activities which are protected by § 7 of the NLRA or which constitute unfair labor practices under § 8. *Building and Const. Trades Council*, 507

---

7. At oral argument, we inquired whether counsel for Local 15 wished to dismiss this action because it is not a "real case" ripe for decision. He politely declined.

U.S. at 224, 113 S.Ct. at 1194; *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *Garmon* preemption also prohibits state or local regulation of activities which the NLRA only arguably protects or prohibits. *Building & Const. Trades Council*, 507 U.S. at 225, 113 S.Ct. at 1194–95; *see also Gould*, 475 U.S. at 286, 106 S.Ct. at 1060–61.

"The Garmon rule is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of 'the integrated scheme of regulation' established by the NLRA." *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 613, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1986)[hereinafter *Golden State I* ] (citation omitted). It "prevents states not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies." *Gould*, 475 U.S. at 286, 106 S.Ct. at 1061.

*Garmon* preemption is not absolute however. The Supreme Court has articulated two notable exceptions to the *Garmon* Rule. A claim is not preempted if (1) the activity regulated is merely a peripheral concern of the federal labor laws or (2) if the conduct touches interests so deeply rooted in local feeling that preemption cannot be inferred absent compelling congressional direction. *Garmon*, 359 U.S. at 243–244, 79 S.Ct. at 778–79; *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 660–61 (7th Cir. 1992). "When determining whether these exceptions apply, [the court] must balance the state's interest in remedying the effect of the challenged conduct against both the interference with the NLRB's ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits." *NLRB v. State of Ill. Dept., of Employment Sec.*, 988 F.2d 735, 739 (7th Cir.1993)(citing *Kolentus v. Avco Corp.*, 798 F.2d 949, 961 (7th Cir.1986), *cert, denied*, 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987)).

The second preemption doctrine, "*Machinists* preemption," prohibits state and local regulation of areas that have been left " 'to be controlled by the free play of economic forces.' " *Lodge 76, Intern. Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976)(quoting *NLRB v. Insurance Agents' Intern. Union, AFL–CIO*, 361 U.S. 477, 488, 80 S.Ct. 419, 426–27, 4 L.Ed.2d 454 (1960)); *see also Building and Const. Trades Council*, 507 U.S. at 225, 113 S.Ct. at 1194–95. The Machinists rule preserves Congress' intentional balance between the power of management and labor to further their respective interests by use of their respective economic weapons which are part and parcel of the collective bargaining process. *Building and Const. Trades Council*, 507 U.S. at 226, 113 S.Ct. at 1195–96.

By enacting the NLRA, Congress explicitly chose to regulate some labor activities but at the same time leave other forms of economic pressure unregulated. *Machinists*, 427 U.S. at 145, 96 S.Ct. at 2555–56. Resort to economic weapons is the right of the employer as well as the employee, and the "State may not prohibit the use of such weapons or add to an employer's federal legal obligations in collective bargaining any more than in the case of employees." *Id.* at 147, 96 S.Ct. at 2556–57 (quotations omitted). Most importantly, states may not "introduce some standard of properly balanced bargaining" or define "what economic sanctions might be permitted negotiating parties in an ideal or balanced state of collective bargaining." *Id.* at 149–50, 96 S.Ct. at 2557–58 (*quoting Insurance Agents'*, 361 U.S. at 497, 500, 80 S.Ct. at 431–32, 433).

■ With these principles in mind, we now turn to the Illinois successor statute which was enacted in 1988 to prevent the erosion of employee rights and benefits under collective bargaining agreements stemming from the mergers and acquisition activity of the 1980s. *See* H.R. 85th General Assembly, Transcription Debate at 68–69, 71–72 (Ill. May 13, 1987).[8] The statute makes a collective bar-

---

**8.** During the House debate, State Representative Saltsman stated:

This legislation is needed now to protect the working people of this state. With the mergers

gaining agreement which contains a "successor clause" binding against a "successor employer" for not more than three years from the effective date of the agreement. 820 ILCS 10/1(a). A "successor employer" is defined as "any purchaser, assignee, or transferee of a business the employees of which are subject to a collective bargaining agreement, if such purchaser, assignee, or transferee conducts or will conduct substantially the same business operation, or offer the same service, and use the same physical facilities, as the contracting employer." 820 ILCS 10/1(b).

Having reviewed the statute and its effects on the integrated scheme of regulation established by the NLRA, we conclude that the Illinois successor statute is preempted by the *Garmon* rule because it is a direct intrusion by the state into the collective bargaining process. Under *Garmon*, the government may not prescribe the terms of a collective bargaining agreement. The collective bargaining process is regulated solely by the NLRA which does not compel "either party to agree to a proposal or require the making of a concession." 29 U.S.C. § 158(d). Indeed, free collective bargaining is a fundamental premise on which the NLRA is based. *NLRB v. Burns Intern., Sec. Services, Inc.,* 406 U.S. 272, 287, 92 S.Ct. 1571, 1582, 32 L.Ed.2d 61 (1972); *Golden State I,* 475 U.S. at 616, 619, 106 S.Ct. at 1399–1400, 1401. The "NLRA leaves the substantive terms of collective bargaining agreements to management and union representatives to hammer out in the collective bargaining process." *Cannon,* 33 F.3d at 884–85.

In *NLRB v. Burns,* the Supreme Court explicitly held that a new employer could not be compelled to honor or assume the substantive terms of a predecessor's collective bargaining agreement. *Id.* 406 U.S. at 287–91, 92 S.Ct. at 1582–84. In reaching this decision, the court emphasized the importance of "bargaining freedom" under the NLRA:

> that are taking some of industry by surprise, with the gobble-up of small business by large corporations, working people in this state are being robbed of benefits which they previously bargained for in good faith.

This bargaining freedom means both that parties need not make any concessions as a result of Government compulsion and that they are free from having contract provisions imposed on them against their will. *Id.* at 287, 92 S.Ct. at 1582 (*quoting H.K. Porter Co. v. NLRB,* 397 U.S. 99, 108, 90 S.Ct. 821, 826, 25 L.Ed.2d 146 (1970)). Forcing a new employer to assume the terms of its predecessor's collective bargaining agreement "would violate the fundamental premise on which the [NLRA] is based—private bargaining under governmental supervision of the procedure alone, without any official compulsion over the actual terms of the contract." *Id.* The court was also concerned with the free transfer of capital:

> A potential employer may be willing to take over a moribund business only if he can make changes in corporate structure, composition of the labor force, work location, task assignment, and nature of supervision. Saddling such an employer with the terms and conditions of employment contained in the old collective-bargaining contract may make these changes impossible and may discourage and inhibit the transfer of capital.

*Id.* at 287–88, 92 S.Ct. at 1582. The balance of bargaining power must be controlled by the relative economic strength of the parties. *Id.* at 288, 92 S.Ct. at 1582–83.

The Illinois successor statute is in direct conflict with the NLRA's fundamental premise of free collective bargaining. It compels a new employer—in this case Kincaid—to assume or honor the terms of a collective bargaining agreement negotiated by its predecessor—here ComEd. The right to be free from such governmental compulsion is protected by § 8(d) of the NLRA. *See* 29 U.S.C. § 158(d); *Golden State I,* 475 U.S. at 616, 106 S.Ct. at 1399–1400 (the NLRA leaves the bargaining process largely to the parties); *see also Jones & Laughlin Steel,* 301 U.S. at 45, 57 S.Ct. at 628 ("The theory of the Act is that free opportunity for negotiation ... may bring about the adjustments

H.R. 85th General Assembly, Transcription Debate, at 73 (Ill. May 13, 1987).

and agreements which the Act in itself does not attempt to compel.").

In *Cannon v. Edgar*, the Seventh Circuit considered the constitutionality of the Illinois Burial Rights Act which required that cemeteries and the gravediggers union negotiate for the establishment of a pool of workers designated to perform religiously required interments during labor disputes. The Seventh Circuit held that under *Garmon* the Burial Rights Act was a direct intrusion into the collective bargaining process because it required that the parties actually agree on a pool of workers or face sanctions by the Illinois courts. 33 F.3d at 884. The court further noted that the NLRA does not tolerate such an invasion into the collective bargaining process but leaves the substantive terms of such an agreement to be hammered out by the parties. *Id.* at 884–85.

Here, the Illinois successor statute presents an even stronger case for *Garmon* preemption. It eliminates the bargaining process altogether by forcing a new employer to honor a collective bargaining agreement it neither bargained for nor assumed. We have no doubt such compulsion violates the NLRA's mandate that the parties not be compelled to agree to a proposal or make a concession. *See, e.g., Burns*, 406 U.S. at 287, 92 S.Ct. at 1582; *see also* 29 U.S.C. § 158(d). Moreover, the Illinois successor statute may also inhibit the free transfer of capital when, as here, Kincaid expressly negotiated in the Sale Agreement with ComEd that it would not be required to honor the terms and conditions of the present collective bargaining agreement. (*See* Asset Sale Agreement ¶ 8.10)

We are not the only federal court to reach this conclusion. In *United Steelworkers of America, AFL–CIO–CLC v. St. Gabriel's Hosp.*, 871 F.Supp. 335 (D.Minn.1994), Judge Doty of the District of Minnesota addressed the constitutionality of an identical successor statute.[9] Under *Garmon*, the court held that the statute was preempted because, contrary to § 8(d) of the NLRA, it compels "a new employer to honor, against its will, the terms of a collective bargaining agreement negotiated by its predecessor." *Id.* at 341. "By binding new employers to collective bargaining agreements against their will, Minnesota's successor statute impermissibly undermines federal labor law policy designed to ensure the free transfer of capital." *Id.* at 342.

The Illinois successor statute also conflicts with the federal successorship doctrine established by the Supreme Court in *Howard Johnson Co., Inc. v. Detroit Local Joint Executive Bd., Hotel and Restaurant Emp. and Bartenders Intern. Union. AFL–CIO*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). There, Howard Johnson purchased a lodge and restaurant whose previous owner had entered into a collective bargaining agreement with the union representing its employees. The collective bargaining agreement contained a "successor clause" which provided that the agreement would be binding on the owner's "successors, assigns, purchasers, lessees or transferees." Howard Johnson refused to recognize the union or to assume any obligation under the collective bargaining agreement.

The Supreme Court noted that the mere existence of a bargained-for successor clause did not bind the purchaser "either to the substantive terms of the agreements or to the arbitration clauses thereof" unless the purchaser expressly or impliedly assumed the collective bargaining agreement or substantial continuity existed between the enterprises. *Id.* at 258 n. 3, 94 S.Ct. at 2241 n. 3. Here, the Illinois successor statute compels Kincaid to assume the terms of the collective bargaining agreement negotiated by its predecessor, ComEd, even though there has

---

9. The Minnesota successor statute provides in part:

Where a collective bargaining agreement between an employer and a labor organization contains a clause regulating the rights and obligations of a new employer, that clause shall be binding upon and enforceable against any new employer until the expiration date of the agreement. That clause shall not be binding upon or enforceable against any new employer for more than three years from the effective date of the collective bargaining agreement between the contracting employer and the labor organization.
Minn.Stat. § 338.02, subd. 2.

been no implied or direct assumption of those terms by Kincaid.

Similarly, in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court held that successorship exists, if at all, only when there is a "substantial continuity of identity in the business enterprise." *Id.* at 551, 84 S.Ct. at 915. The court found such continuity in *Wiley* because the new employer or successor employed a majority of the predecessor's employees. Id. at 548–51, 84 S.Ct. at 913–15. In reaching this conclusion, the court recognized the need to balance the "rightful prerogative of owners ... to rearrange their businesses ... [against the need to protect] the employees from a sudden change in the employment relationship." *Id.* at 549, 84 S.Ct. at 914.

*Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987) later clarified the test for determining when a purchaser becomes a legal "successor." The Supreme Court adopted a totality of the circumstances test for determining whether there is a substantial continuity between the business enterprises. Application of this test requires the evaluation of several factors including:

> whether the business of both employees is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

*Id.* at 43, 107 S.Ct. at 2236. Most importantly, the substantial continuity requirement will be satisfied—and therefore successorship status imposed—only if a majority of the purchaser's work force were previously employed by the predecessor. *Id.* at 46 n. 12, 107 S.Ct. at 2237 n. 12.

The Illinois successor statute ignores the substantial continuity requirements under *Wiley* and *Fall River Dyeing*. Rather, the statute defines a "successor employer" as "any purchaser, assignee, or transferee of a business the employees of which are subject to a collective bargaining agreement, if such purchaser, assignee, or transferee conducts or will conduct substantially the same business operation, or offer the same service, and use the same physical facilities, as the contracting employer." 820 ILCS 10/1(b). Kincaid is therefore deemed a legal successor under the statute because it plans to conduct substantially the same business in the same facilities regardless of whether it hires any of Local 15's bargaining unit employees.

Lastly, the Illinois successor statute imposes a fine not to exceed $5,000 on an employer that fails to comply with its provisions. 820 ILCS 10/2. Obviously, a $5,000 fine would have little, if any, effect on the conduct of large employers such as ComEd and Kincaid. That, however, is not controlling when, as here, the state law provides a punitive fine not provided by the NLRA. This state law remedy may be sufficient to raise the specter of preemption under *Garmon*.

The *Garmon* rule "prevents states not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies." *Gould*, 475 U.S. at 286, 106 S.Ct. at 1061. "[T]o allow the State to grant a remedy ... which has been withheld from the National Labor Relations Board only accentuates the danger of conflict" between state and federal law because "the range and nature of those remedies that are and are not available is a fundamental part of the comprehensive labor law system established by Congress." *Gould*, 475 U.S. at 287, 106 S.Ct. at 1061 (*citing Garmon*, 359 U.S. at 247–48, 79 S.Ct. at 781); *see also Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776*, 346 U.S. 485, 498–99, 74 S.Ct. 161, 170, 98 L.Ed. 228 (1953)(conflict is imminent whenever "two separate remedies are brought to bear on the same activity."). Punitive sanctions also conflict with the remedial philosophy of the NLRA. *Gould*, 475 U.S. at 288 n. 5, 106 S.Ct. at 1062 n. 5.

Local 15 contends that the Illinois successor statute is not preempted because it falls within the "peripheral concern" and "local feeling" exceptions to the *Garmon* rule.

(Pl.'s Mere. Opp'n Mot. Summ. J. at 11).[10] Specifically, Local 15 suggests that the Illinois successor statute reflects the state's substantial interest in protecting its citizens from the economic dislocation caused by a plant-closing or sale. Local 15 further argues that the sale of the Generating Station is overwhelmingly a state matter with minimal impact upon federal labor law matters. We disagree.

Alleviating worker dislocation is undoubtedly a legitimate state interest. However, by enacting the Illinois successor statute and forcing a new employer to accept terms and conditions of an agreement it did not bargain for, the State of Illinois has actually entered the collective bargaining process and prescribed the terms of agreement. The statute therefore affects free collective bargaining which, contrary to Local 15's assertions, has a substantial impact on federal labor law. "Free collective bargaining is the cornerstone of the structure of labor-management relations carefully designed by Congress when it enacted the NLRA." *Golden State I,* 475 U.S. at 619, 106 S.Ct. at 1401 (*quoting New York Telephone,* 440 U.S. at 551, 99 S.Ct. at 1346–47 (Powell, J.; dissenting)).

Additionally, the Supreme Court has made clear that the exceptions to the *Garmon* rule apply to matters of general state law such as criminal and tortious activity. *See Farmer v. United Broth., of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 292, 296, 97 S.Ct. 1056, 1059, 1061, 51 L.Ed.2d 338 (1977)(Court held that NLRA did not preempt state tort action for intentional infliction of emotional distress because it was unrelated to the collective bargaining process that Congress intended to regulate when it passed the NLRA); *Belknap, Inc. v. Hale,* 463 U.S. 491, 512, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983)(NLRA does not preempt state law action for misrepresentation and breach of contract by replacement worker against em-

ployer); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978)(NLRA does not preempt state law trespass action); *Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133 (7th Cir.1987)(NLRA does not preempt action for intentional infliction of emotional distress); *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 55, 86 S.Ct. 657, 659, 15 L.Ed.2d 582 (1966)(state law action for defamation not preempted by the NLRA). Similarly, the "[p]olicing of actual or threatened violence to persons· or destruction of property has been held most clearly a matter for the States." *Machinists,* 427 U.S. at 136, 96 S.Ct. at 2551.

The Illinois successor statute is unrelated to these matters of general state law. It neither creates a common law tort nor regulates public safety as in *Farmer, Belknap,* and *Sears Roebuck.* *See. e.g., Cannon,* 33 F.3d at 884. Rather, the statute compels a new employer to assume the terms of a collective bargaining agreement it is assumed nor bargained for in direct violation of § 8(d) of the NLRA. It also directly conflicts with the federal law of successorship as established by the Supreme Court in *Howard Johnson, Burns, Wiley,* and *Fall River Dyeing.* The exceptions to the *Garmon* rule therefore do not apply to save the Illinois successor statute from preemption.

For the same reasons that the Illinois successor statute does not satisfy the *Garmon* exceptions, it is likewise preempted by *Machinists* which prohibits state and local regulation of areas that have been left "'to be controlled · by the free play of economic forces.'" *Machinists,* 427 U.S. at 140, 96 S.Ct. at 2553 (*quoting Insurance Agents',* 361 U.S. at 488, 80 S.Ct. at 426–27). The state may not "add to an employer's federal legal obligations in collective bargaining any more than in the case of employees." *Machinists,*

---

10. Local 15 actually invokes this exception with respect to preemption under § 301 of the LMRA. This exception, however, does not apply to LMRA preemption. *See Lueck,* 471 U.S. at 214 n. 9, 105 S.Ct. at 1913 n. 9 ("So-called *Garmon* preemption involves protecting the primary jurisdiction of the NLRB, and requires balancing of state and federal interests ... In this situation

[involving § 301 preemption] the balancing of state and federal interests required by *Garmon* preemption is irrelevant, since Congress, acting within its powers under the Commerce Clause, has provided that federal law must prevail."). Thus, we will discuss this exception with respect to NLRA preemption under *Garmon.*

427 U.S. at 147, 96 S.Ct. at 2557 (quotations omitted). Most importantly, states may not "introduce some standard of properly balanced bargaining" or define "what economic sanctions might be permitted negotiating parties in an ideal or balanced state of collective bargaining." *Id.* at 149–50, 96 S.Ct. at 2557–58 (quoting *Insurance Agents'*, 361 U.S. at 497, 500, 80 S.Ct. at 431–32, 433).

As we previously discussed, the Illinois successor statute adds to an employer's federal legal obligations by forcing it to honor a collective bargaining agreement it neither bargained for nor assumed. It also requires the predecessor employer (ComEd) to include a statement in the sale agreement that the purchaser (Kincaid) must agree to assume the terms of the existing collective bargaining agreement. *See* 820 ILCS 10/1(d).

Further, the Illinois successor statute prohibits a new employer from exercising its well-established rights. The statute automatically makes the predecessor's employees the employees of a new employer who conducts substantially the same business using the same facilities. *See* 820 ILCS 10/1(b). In *Howard Johnson*, the Supreme Court emphasized that a new employer has the right not to hire any of the employees of its predecessor. 417 U.S. at 261–62, 94 S.Ct. at 2242–43. Such matters are left to the relative economic strength of the parties. *Id.* at 264, 94 S.Ct. at 2244. Because the Illinois successor statute regulates areas that have been left "to be controlled by the free play of economic forces," it is preempted under *Machinists*.

In sum, we do not question the Illinois legislature's motives in seeking to protect employee rights and benefits under collective bargaining agreements. On the contrary, we find fault only with the means employed by the state to achieve this purpose. By enacting the Illinois successor statute, the State of Illinois entered "into the substantive aspects of the bargaining process to an extent Congress has not countenanced." *Machinists*, 427 U.S. at 149, 96 S.Ct. at 2557 (*quoting Insurance Agents'*, 361 U.S. at 498, 80 S.Ct. at 432). The State of Illinois may not require a new employer such as Kincaid to

honor the terms of a collective bargaining agreement it neither assumed nor bargained for. Such regulation is prohibited by the NLRA and is left to the free play of economic forces. The Illinois successor statute is therefore preempted under *Garmon* and *Machinists* insofar as it applies to employers who are subject to the NLRA.

## CONCLUSION

For all of the foregoing reasons, we find that the Illinois successor statute, 820 ILCS 10/1, is preempted by § 301 of the LMRA and by the NLRA insofar as it applies to employers who are subject to those federal labor statutes. Thus, the Illinois successor statute violates the Supremacy Clause of the United States Constitution, U.S. Const., art. VI, cl.2, insofar as it applies to employers who are subject to the LMRA and NLRA.

Accordingly, Coned's and Kincaid's motions for summary judgment in Case No. 96 C 7295 are granted. For the same reasons, ComEd's motion for summary judgment in Case No. 96 C 3989 is also granted. Judgement is hereby entered in favor ComEd and Kincaid in Case No. 96 C 7295 and in favor of ComEd in Case No. 96 C 3989. This is a final and appealable order.

It is so ordered.